**WRIGHT & TAYLOR, Inc., v. LUCAS, Collector of Internal Revenue.**

District Court, W. D. Kentucky, at Louisville. July 26, 1929.

S. Lyman Barber and Miller & Chevalier, all of Louisville, Ky., for plaintiff.

T. J. Sparks, U. S. Atty., of Greenville, Ky., Frank A. Ropke, Asst. U. S. Atty., of Louisville, Ky., and C. M. Charest, Gen. Counsel, Bureau Internal Revenue, of Washington, D. C., for defendant.

DAWSON, District Judge. This is a suit to recover income and profits taxes for the fiscal year ended June 30, 1918, collected by duress from the plaintiff after the period of limitation for collection had expired. The facts are stipulated, and the case has been submitted to the court for determination without the intervention of a jury. Briefly stated, the facts are these:

The plaintiff, a corporation, made its income tax returns on a fiscal year basis, its fiscal year ending on June 30th. In August, 1918, it made its income and profits tax return for the fiscal year ended June 30, 1918, and the amount shown to be due by that return, after the allowance by the Commissioner of certain abatements, and after the crediting of certain overpayments on previous years, was paid, and is not here in controversy.

Pursuant to the provisions of the Revenue Act of 1918, approved February 24, 1919 (40 Stat. 1057) the plaintiff, on March 15, 1919, filed a tentative supplemental return for the fiscal year ended June 30, 1918, and on June 17, 1919, filed a complete supplemental return for the fiscal year ended June 30, 1918, showing an additional tax of $85,186.71 due for said fiscal year, and this amount was assessed by the Commissioner of Internal Revenue on September 12, 1919. On the August, 1919, assessment list the Commissioner of Internal Revenue assessed a further tax of $26,376.29 against the plaintiff for the same fiscal year. At the time the two supplemental returns were made the plaintiff paid in the aggregate, on account of additional tax shown to be due thereon, the sum of $49,344.88. On September 15, 1919, abatement claims in the respective amounts of $53,824.85 and $26,376.29 were filed. On December 13, 1923, plaintiff signed and delivered to the Commissioner of Internal Revenue a waiver, consenting to an extension of time for the assessment and collection of any additional income and profits taxes which might be due for the fiscal year ended June 30, 1918,

for a period of one year from the date said waiver was signed.

No further steps were taken for the collection of the unpaid balance due on the assessment of September 12, 1919, or for the collection of the August, 1919, assessment until September 8, 1925, when the defendant collected from the plaintiff, under threat of distraint, the sum of $84,809.47. This sum represented the balance due on the two assessments of September 12, 1919, and August, 1919, and interest. No suit or proceeding of any character had been begun prior to September 8, 1925, for the collection of said tax and interest, or any part thereof.

On September 30, 1925, plaintiff filed a claim for the refund of said sum of $84,809.-47, and, the Commissioner of Internal Revenue having failed to act on this claim within six months from the date of its filing, this suit was filed on April 14, 1927.

■ From the foregoing statement it is apparent that, under the applicable limitation statutes, and giving full effect to the year's extension granted by the waiver signed December 13, 1923, the collection of this $84,-809.47 became barred on December 13, 1924, and that on September 8, 1925, when same was collected, the defendant was without authority to enforce collection, either by distraint or suit. Bowers v. New York & Albany Lighterage Co., 273 U. S. 346, 47 S. Ct. 389, 71 L. Ed. 676; Russell v. United States, 278 U. S. 181, 49 S. Ct. 121, 73 L. Ed. 255. This is admitted by the defendant, and, unless section 611 of the Revenue Act of 1928 (26 USCA § 2611) applies to the situation here, the plaintiff is entitled to recover. Section 611 of that act is as follows:

"If any internal-revenue tax (or any interest, penalty, additional amount, or addition to such tax) was, within the period of limitation properly applicable thereto, assessed prior to June 2, 1924, and if a claim in abatement was filed, with or without bond, and if the collection of any part thereof was stayed, then the payment of such part (made before or within one year after the enactment of this act) shall not be considered as an over-payment under the provisions of Section 607 relating to payments made after the expiration of the period of limitation on assessment and collection."

Section 607 of the Act of 1928 (26 USCA § 2607) provides:

"Any tax (or any interest, penalty, additional amount, or addition to such tax) assessed or paid (whether before or after the enactment of this act) after the expiration of

the period of limitation properly applicable thereto, shall be considered an over-payment and shall be credited or refunded to the taxpayer, if claim therefor is filed within the period of limitation for filing such claim."

It is admitted in this case that the assessment was made prior to June 2, 1924, that a claim in abatement was filed, and that, pending decision on the claim in abatement, the collector made no attempt whatever to collect the tax assessed. The plaintiff contends, however, that the mere voluntary postponement by the collector of collection of the tax assessed, pending decision on the claim in abatement, is not a stay of collection within the meaning of section 611. It is insisted that the stay contemplated in that section is a compulsory stay, such as was provided by section 279 of the Revenue Act of 1924 (26 USCA § 1063 note) which provided that a claim in abatement " * * * shall be accompanied by a bond, in such amount, not exceeding double the amount of the claim, and with such sureties, as the Collector deems necessary, conditioned upon the payment of so much of the amount of the claim as is not abated, together with interest thereon as provided in Subdivision (c) of this section. Upon the filing of such claim and bond, the collection of so much of the amount assessed as is covered by such claim and bond shall be stayed pending the final disposition of the claim."

Section 611, by its express terms, deals with taxes assessed under revenue acts in force prior to the effective date of the Revenue Act of 1924. Therefore it seems to me that a review of the history of the use of claims in abatement under the Acts of 1916 (39 Stat. 756), 1917 (40 Stat. 300), 1918 (40 Stat. 1057), and 1921 (42 Stat. 227), and the provisions of those acts in relation to such claims, and the regulations of the Treasury Department under which those acts were administered, will be helpful in arriving at the true meaning of section 611. The acts of 1916, 1917, and 1921 contain no provision whatever for the filing of claims in abatement, or for staying collection of the tax pending decision on claims in abatement, and the only provision with reference to claims in abatement contained in the 1918 act is paragraph 14 of section 234 (40 Stat. 1077), which authorized a taxpayer, at the time of filing his return for the taxable year 1918, to file a claim in abatement, based on the fact that he had sustained a substantial loss arising from shrinkage in inventory value, etc., during such taxable year. This section further provides:

"In such case payment of the amount of the tax covered by such claim shall not be required until the claim is decided, but the taxpayer shall accompany his claim with a bond in double the amount of the tax covered by the claim, with surety satisfactory to the Commissioner, conditioned for the payment of any part of such tax found to be due, with interest."

Thus it will be observed that, when the act of 1928 was enacted, the only statutory provision in any of the Revenue Acts affected by the provisions of section 611 was the one contained in the act of 1918, which specifically provided for the execution of a bond as a condition precedent for staying collection pending decision on a claim in abatement. It is apparent, however, that section 611 is not restricted in its operation to the special claim in abatement and the stay of collection thereunder provided for in the act of 1918, because section 611, by its express terms, operates in those cases where the stay was granted without bond, as well as in those cases where it was granted with bond. While neither the acts of 1916, 1917, 1921, nor the act of 1918, except as hereinbefore pointed out, made any provision for the filing of claims in abatement, yet section 3220 of the Revised Statutes, as amended and re-enacted by those acts (26 USCA § 149), gave to the Commissioner ample authority to abate taxes illegally or erroneously assessed. Each of those acts gave to the Commissioner of Internal Revenue the authority, with the approval of the Secretary of the Treasury, to make rules and regulations for the enforcement of its provisions, and it is well settled that these rules and regulations, if not in conflict with the law, have the force and effect of law. By virtue of this authority, Regulations 33 were promulgated for the administration of the Revenue Acts of 1916 and 1917, Regulations 45 for the administration of the Revenue Act of 1918, and Regulations 62 for the act of 1921. Each of these regulations made specific provision for the filing of claims in abatement. In none of these regulations, however, was any provision made for the execution of bond, nor was there any mandatory provision that collection must be or must not be stayed pending decision on a claim in abatement. Each of these regulations, however, contain a provision similar to that found in article 1032 of Regulations 45, which declares:

"The filing of a claim in abatement does not necessarily operate as a suspension of the collection of the tax or make it any less the duty of the Collector to exercise due diligence to prevent the collection of the tax being jeopardized. He should, if he considers it necessary, collect the tax and leave the taxpayer to his remedy by a claim for refund." See article 261, Regulations 33; article 1032, Regulations 45; article 1032, Regulations 62.

It is thus clear that, inferentially, the regulations authorized the collectors to postpone the collection of the tax pending decision on the claim in abatement, unless such postponement, in the judgment of the collector, would jeopardize the collection of the amount finally determined to be due, and it is common knowledge that such was the usual practice. Sometimes a collector would demand a bond as a consideration for postponement of collection; sometimes, when he had reason to doubt the solvency of a taxpayer, collection was immediately enforced; but, as a usual thing, if the collector had no doubt of the solvency of the taxpayer, collection was withheld until final action on the claim.

It thus happened that in many cases arising under the Revenue Acts of 1916, 1917, 1918, and 1921 limitation had run against collection of the tax by the time the claim in abatement had been disposed of, and in those cases where bonds had not been exacted the taxpayer was resisting collection or paying under protest, on the claim that the tax was barred by limitation. Prior to the decision of the case of Bowers v. New York & Albany Lighterage Co., supra, those charged with the collection of income and profits taxes went on the assumption that the limitation provision of the respective acts did not apply to distraints. See I. T. 1446, p. 218, Internal Revenue Cumulative Bulletin 1-2. This, no doubt, made the collectors generally more willing to postpone collection of an assessment pending decision on a claim in abatement than they otherwise would have been.

Following the decision of the Supreme Court in the case of Bowers v. New York & Albany Lighterage Co., a great many taxpayers, who had failed to get relief on their claims in abatement, and who had paid their taxes under threat of distraint after limitation had run, were seeking to secure refunds, on the ground that collection had been forced from them illegally. This situation was at its height when Congress came to consider the enactment of the Revenue Act of 1928, and it was to prevent taxpayers taking advantage of the delay occasioned by their having filed claims in abatement that section 611 was enacted. The purpose of section 611 is very clearly portrayed in the explanation of that

section contained in the report of the Ways and Means Committee made when that committee reported the bill to the House of Representatives. This report stated:

"Prior to the enactment of the Revenue Act of 1924, it was the administrative practice to assess immediately additional taxes determined to be due. Upon the assessment, taxpayers were frequently permitted to file claims in abatement with the Collector and thus delay the collection until the claim in abatement could be acted upon. If this practice had not been followed, undue hardship undoubtedly would have been imposed upon the taxpayer. It was supposed that there was no limitation upon the collection by distraint of the amount ultimately determined to be due. However, the Supreme Court has recently held in a case in which the period for assessment expired prior to the enactment of the 1924 Act, that the period for collection was limited to five years from the date on which the return was filed. Decisions upon claims in abatement are being made every day. Amounts have been paid, are being paid, by the taxpayer even though the statute of limitations may have run. Exceptionally large amounts are involved. Accordingly, it is of utmost importance to provide that the payments already made should not be refunded. In order to prevent inequality, it is also provided that the amounts not yet paid may be collected within a year after the enactment of the new Act.

"Your Committee appreciates the fact that this provision will probably be subjected to severe criticism by some of the taxpayers affected. However, it must be borne in mind that the provision authorizes the retention and collection only of amounts properly due, and merely withdraws the defense of the statute of limitations. If it is determined that the amount paid is in excess of the proper tax liability, computed without regard to the statute of limitations, such excess will constitute an overpayment which may be refunded or credited as in the case of any other overpayment. (Report No. 2, 70th Congress, 1st Session, p. 34)."

Considering the language of section 611 in connection with the provision of the Revenue Acts under which the assessments affected by that section were made, the regulation and practice of the Treasury Department with reference to claims in abatement under those acts, and the purpose sought to be accomplished, as shown by the Committee Report, supra, there cannot be any doubt that it was the purpose of Congress through this section to prohibit refunds being made from the Treasury in cases similar to the one at bar. There is no merit in the plaintiff's suggestion that section 611 is only an inhibition against the Commissioner of Internal Revenue making refunds in such cases, but that it has no application in a suit against a collector such as the one here. Such a construction of this section would lead to an unconscionable result. When he collected the tax, the collector was required by law to immediately pay same into the Treasury. He had no right to retain the money pending the outcome of threatened litigation over the collection. The government has had the benefit of the collection. Yet, if the plaintiff's theory is correct, Congress intentionally left collectors open to suit and judgment in such cases as the one at bar but denied them the right of reimbursement for any judgments thus obtained. It seems to me that the mere suggestion of the result of such a construction forces us to reject it.

I must therefore conclude that section 611 was intended by Congress to take away from those taxpayers who had filed claims in abatement of assessments made prior to June 2, 1924, and who had, as the result of filing such claims, secured a postponement of payment pending decision on the claims, and who had been forced after the running of limitation to pay the tax thus assessed, the right to rely upon the fact that collection had been forced after the running of limitation as a basis for recovering a refund, whether the suit for such recovery is against the collector who made same or directly against the United States. Having reached this conclusion, it remains to be determined if the statute so construed deprives plaintiff of its property rights, in violation of the Fifth Amendment to the Federal Constitution, as contended by the plaintiff.

It is well settled that no one has a vested right to rely upon a statute of limitation to defeat a debt or other personal obligation. The Legislature which gave the right may take it away, even after the bar has become complete. Campbell v. Holt, 115 U. S. 620, 6 S. Ct. 209, 29 L. Ed. 483. If this suit were turned around, and were one by the United States against the plaintiff, to collect the tax involved here, the plaintiff certainly could not be heard to plead a statute of limitation formerly in force, but which had been repealed before the bringing of the suit, even though the bar under the former statute was complete prior to its repeal and prior to filing the suit. If a taxpayer has no vested interest

in the defense of the statute of limitation, it is difficult to understand how he can have any vested interest in the right to recover taxes from the collector, on the sole ground that payment was coerced after limitation had run. It seems to me that if his right to rely upon the statute as a defense may be destroyed by repeal or modification, his right to rely upon the statute as a basis for recovery may likewise be destroyed by repeal or modification. There can be no doubt that Congress had full power, immediately before the taxes were collected in this case, to have passed a law, denying to taxpayers situated as the plaintiff was the right to rely upon the statute of limitations, although the statute had run at the time of the passage of such law. Neither can there be any doubt of the soundness of the proposition that the collector, in collecting taxes, acts as an agent of the United States. Furthermore, it is well settled that where an agent, without precedent authority, has exercised, in the name of a principal, a power which the principal had the capacity to bestow, the principal may ratify and affirm the unauthorized act, and thus retroactively give it validity, when rights of third persons have not intervened. United States v. Heinszen & Co., 206 U. S. 370, 27 S. Ct. 742, 51 L. Ed. 1098, 11 Ann Cas. 688; Rafferty v. Smith, Bell & Co., 257 U. S. 226, 42 S. Ct. 71, 66 L. Ed. 208.

In this case we have the defendant, as collector, acting as the agent of the United States. At a time when he was not authorized so to do, but at a time when the Congress of the United States had full authority to authorize him so to do, he collected, after limitation had run, the taxes involved in this case, and Congress had the power then, and has had that power at all times since then, to ratify the unauthorized collection, and that is what it did do, in effect, by the enactment of section 611. It is true, when the plaintiff paid the taxes under duress, after the running of limitation, a right accrued to it to recover the taxes so paid, but that right was necessarily limited by the superior right of Congress to ratify the unauthorized collection.

As pointed out in the case of United States v. Heinszen, supra:

"To hold to the contrary would be to say that whilst the unauthorized act of an officer done on behalf of the United States was subject to ratification by the United States, yet, if the officer acted without authority, the act, when performed, annihilated the power to ratify; that is, that the very condition which engendered the power destroyed it."

The fact that plaintiff had brought suit on its claim prior to the enactment of section 611 did not change the nature of plaintiff's right nor impair the paramount right of Congress to ratify.

In discussing how far the bringing of actions would operate to deprive the government of the power to enact ratifying statutes which, if the action had not been brought, would have been valid, Cooley in his Constitutional Limitations (7th Ed. p. 543) says:

"Nor is it important in any of the cases to which we have referred that the legislative act which cures the irregularity, defect or want of original authority was passed after suit brought, in which such irregularity or defect became matter of importance. The bringing of suit vests in a party no right to a particular decision."

This quotation was cited with approval in the Heinszen Case, supra.

For the reasons stated, I am convinced that section 611 controls the case at bar, and therefore plaintiff's petition will be dismissed and costs awarded to the defendant. A judgment conforming to the views herein expressed may be prepared by counsel and presented for entry.