## IMHOFF–BERG SILK DYEING CO. v. UNITED STATES.

District Court, D. New Jersey.
Sept. 16, 1930.

Surosky & Surosky, of Paterson, N. J., for plaintiff.

Phillip Forman, U. S. Atty., of Trenton, N. J. (Anthony Giuliano, Asst. U. S. Atty., of Newark, N. J., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and J. A. Rees, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for defendant.

RUNYON, District Judge.

This action was instituted pursuant to the provisions of section 24, par. 20, of the Judicial Code, as amended (28 USCA § 41 (20), to recover the sum of $7,042.63, income and profits taxes assessed and collected for the calendar year 1918, and was tried before the court without a jury.

There is no question presented as to the legality or correctness of the assessment of this sum, and the controversy arises because said sum is alleged to have been erroneously and illegally collected and payment thereof made under protest and threat of distraint, after the expiration of the statutory period within which collection thereof might lawfully have been made.

The record shows that the plaintiff's corporation income and profits tax return for the calendar year 1918, was filed on or before June 16, 1919; further, that an assessment of additional taxes in the sum of $13,389.42 for said year was made by the Commissioner of Internal Revenue on February 27, 1920, and that on July 22, 1920, the plaintiff filed its claim for abatement of the additional taxes so assessed. This claim for abatement was later allowed in part by the Commissioner of Internal Revenue on a certificate of overassessment, dated March 8, 1922, in the amount of $7,988.55. The balance of the claims, still remaining after such

partial allowance, was subsequently further considered by the Commissioner of Internal Revenue at the request of this plaintiff, but no relief for plaintiff was forthcoming as a result, and it is this balance, plus accrued interest thereon, which is sought to be recovered in this suit. During the time the above matter was being for the second time considered by the Commission of Internal Revenue, as above set out, it is conceded that no further attempt was made by the revenue collector, the official charged by law with the collection of the said assessment, to collect the same or any part thereof until June 26, 1924, at which time said balance last mentioned was collected from the plaintiff by distraint and paid under protest.

This collection, it is agreed, was made five years and ten days after plaintiff's income and profits tax return was filed, being ten days after the expiration of the statutory period of limitation in effect at the time collection was so made, that plaintiff in due form and time filed its claim for refund of said balance on June 29, 1927, and that no action thereon had been undertaken by the collector of internal revenue prior to the institution of this suit.

It is admitted that plaintiff's suit is timely and properly brought, and that, were it not for the provisions of section 611 of the Revenue Act of 1928 (26 USCA § 2611), the plaintiff's right to a return of its money would be clear under the terms of section 607 (26 USCA § 2607).

This matter in difference therefore relates solely to the construction and application of the provisions of said section 611, Revenue Act of 1928.

The statutes which are pertinent to the present discussion are sections 607 and 611 of the Revenue Act of 1928, reading as follows:

"Sec. 607. *Effect of Expiration of Period of Limitation against United States.*

"Any tax (or any interest, penalty, additional amount, or addition to such tax) assessed or paid (whether before or after the enactment of this Act) after the expiration of the period of limitation properly applicable thereto shall be considered an overpayment and shall be credited or refunded to the taxpayer if claim therefor is filed within the period of limitation for filing such claim."

"Sec. 611. *Collection Stayed by Claim in Abatement.*

"If any internal-revenue tax (or any interest, penalty, additional amount, or addition to such tax) was, within the period of limitation properly applicable thereto, assessed prior to June 2, 1924, and if a claim in abatement was filed, with or without bond, and if the collection of any part thereof was stayed, then the payment of such part (made before or within one year after the enactment of this Act) shall not be considered as an overpayment under the provisions of section 607, relating to payments made after the expiration of the period of limitation on assessment and collection."

The wording of section 611 is such that, in order that the payment of any tax, interest, etc., may come within the express provisions thereof, it must appear that (1) such tax was regularly assessed prior to June 2, 1924; (2) a claim for abatement was filed; (3) the sum in question was paid before or within one year after the enactment of the Revenue Act of 1928; and (4) that the collection thereof was *stayed*.

In the first three respects the conditions of this section are met, since it is admitted that the tax herein was assessed February 27, 1920, long prior to June 2, 1924, that a claim for abatement of said tax was filed July 22, 1920, and that the amount of said tax with interest thereon, being the sum for the recovery of which this suit is brought, was paid June 26, 1924, prior to the enactment of the Revenue Act of 1928, on May 29 of that year.

This being the case, the one question of fact left for decision is as follows: Was or was not the collection of this amount *stayed* within the meaning of section 611? Granting, as we must, that the term "stay" is susceptible of more than one interpretation; that under one interpretation of the term, a strictly legal one, there is little if any doubt that the circumstances of this case fail, so far as any stay by operation of law is concerned, to meet the requirements of such interpretation; that under another interpretation, giving a less rigorous and formal meaning to the word, an altogether different result ensues—it becomes necessary and advisable, as best we may, to learn the true intent which accompanied the enactment of the statute in question, and likewise such opinions of others who have discussed the subject as appeal most poignantly to our sense of logic, fitness, and reason.

While legislative debate, partaking of necessity very largely of impromptu statements and opinions, cannot be resorted to

with any confidence as showing the true intent of Congress in the enactment of statutes, a somewhat different standard obtains with reference to the pronouncements of committees having in charge the preparation of such proposed laws. These committee announcements do not of course carry the weight of a judicial opinion, but are rightly regarded as possessing very considerable value of an explanatory nature regarding legislative intent where the meaning of a statute is obscure.

In this connection the Ways and Means Committee of the House of Representatives, in reporting the revenue bill which became the Revenue Act of 1928, made this statement concerning section 611:

"Prior to the enactment of the Revenue Act of 1924, it was the administrative practice to assess immediately additional taxes determined to be due. *Upon the assessment, taxpayers were frequently permitted to file claims in abatement with the Collector and thus delay the collection until the claim in abatement could be acted upon. If this practice had not been followed, undue hardship undoubtedly would have been imposed upon the taxpayer.* It was supposed that there was no limitation upon the collection by distraint of the amount ultimately determined to be due. However, the Supreme Court has recently held in a case in which the period for assessment expired prior to the enactment of the 1924 Act, that the period for collection was limited to five years from the date on which the return was filed. *Decisions upon claims in abatement are being made every day. Amounts have been paid, are being paid, by the taxpayer even though the statute of limitations may have run. Exceptionally large amounts are involved. Accordingly, it is of utmost importance to provide that the payments already made should not be refunded.* In order to prevent inequality, it is also provided that the amounts not yet paid may be collected within a year after the enactment of a new Act.

"Your Committee appreciates the fact that this provision will probably be subjected to severe criticism by some of the taxpayers affected. *However, it must be borne in mind that the provision authorizes the retention and collection only of amounts properly due, and merely withdraws the defense of the statute of limitations.* If it is determined that the amount paid is in excess of the proper tax liability, computed without regard to the statute of limitations, such excess will constitute an overpayment which may be refunded or credited as in the case of any other

overpayment." (Italics added.) Report No. 2, Seventieth Congress, First Session, p. 34.

So far as the Ways and Means Committee is concerned, it is plain that in the preparation of section 611 the intent was to prevent the refunding of taxes properly due which had been collected or paid after the expiration of the statutory period for collection prior to the enactment of the Revenue Act of 1924, and to withdraw the defense of the statute of limitations, but only in cases in which claims in abatement had been filed and no action taken to enforce payment of tax pending consideration of an action upon such claims.

As defining another standard appropriate for consultation herein appears the following from the case of Edwards' Lessee v. Darby, 12 Wheat. 206, 210, 6 L. Ed. 603:

"In the construction of a doubtful and ambiguous law, the contemporaneous construction of those who were called upon to act under the law, and were appointed to carry its provisions into effect, is entitled to very great respect."

This language is cited with approval in the following cases: National Lead Co. v. U. S., 252 U. S. 140, 145, 146, 40 S. Ct. 237, 64 L. Ed. 496; U. S. v. Hill, 120 U. S. 169, 182, 7 S. Ct. 510, 30 L. Ed. 627; Brown, Adm'x, v. U. S., 113 U. S. 568, 571, 5 S. Ct. 648, 28 L. Ed. 1079.

In this connection it is pertinent to read three published rulings of the Bureau of Internal Revenue under the auspices of which section 611 is carried into effect, viz. G. C. M. 4639, 4879, and 5086. These rulings are as follows:

G. C. M. 4639: "It should be noted in the report of the committee that the word 'stayed' as used in section 611 does not contemplate a judicial or statutory stay of proceedings, but merely refers to a delay or proceedings to enforce collection by reason of the filing of a claim in abatement. In other words, *if enforcement of collection was withheld or delayed while the claim in abatement was pending before the Bureau, that is the stay of collection contemplated by section 611 of the Revenue Act of 1928*". (Italics added.)

G. C. M. 4879: "The filing of a claim in abatement does not in and of itself satisfy the provisions of that section. Its provisions are applicable only if a timely assessment was made prior to June 2, 1924, and if, upon the filing of a claim in abatement, collection was stayed."

G. C. M. 5086: "In sections 607 and 611 Congress has, by specific legislation prescribed the effect of the bar of the statute of limitations against the United States as contained in the various Revenue Acts. Under the provisions of the said sections any payment made after the running of the statute shall constitute an overpayment of tax and be subject to a refund upon the filing of a claim therefor, except in cases where a timely assessment was made before June 2, 1924, a claim in abatement was filed, and collection of a tax was stayed. The applicability of section 611, or the exception referred to, is not made dependent upon the necessity of a stay of collection or upon whether or not there remained sufficient time within which to enforce collection seasonably after the claim was rejected. Its provisions are fully complied with, in so far as the question under consideration is concerned, if, as the result of the filing of the claim, collection was delayed."

 From all the foregoing it appears clear that in the minds of the members of the Ways and Means Committee in Congress, as well as in the minds of those members of the Bureau of Internal Revenue who formulated and published the rulings of that body above set forth, the "stay" referred to in the statute is not to be taken and considered as meaning a judicial or statutory prohibition against collection, nor a binding stay coming as the result of the execution of an enforceable agreement between the taxpayers and Commissioner, or between the taxpayer and collector, but means rather a delay and a voluntary postponement of proceedings to enforce collection pending the consideration of the abatement claim upon its merits, and that the very evident and main intent of the framers of the statute under consideration was to withdraw the statute of limitations as a defense in certain cases—those wherein an assessment had been made prior to June 2, 1924, a claim in abatement had been filed, the tax, etc., collected after the expiration of the five-year period of limitation for collection, and the collection had been "stayed."

This being the case, it appears only logical to determine that the term "stay" could not have been taken and used, and held to mean a legal stay, viz. a stay brought about by operation of law, for, if this were the arrangement, the legislation would have had no appreciable reason for being, since no statute of limitation upon the collection of taxes could have run during the period covered by such stay. Equally true it is that the term "stayed" could not have been intended to mean that the collection of taxes was delayed or postponed by some act of the taxpayer which either morally or legally prevented such collection until the expiration of a prescribed statutory period, for this arrangement could have resulted only from an agreement between the interested parties, and, aside from all else, would in effect have meant conferring upon a taxpayer power to enjoin the collection of taxes which had been duly assessed against him, a doctrine which is declared forbidden by Rev. St. § 3224 (26 USCA § 154), in Graham v. Du Pont, 262 U. S. 234, 43 S. Ct. 567, 67 L. Ed. 965. See, also, Union Fishermen's Co-operative Packing Co. v. Huntley (D. C.) 285 F. 671.

Prior to the enactment of the Revenue Acts of 1918 and 1921 (40 Stat. 1057; 42 Stat. 227), and the promulgation hereunder of various regulations, the Commissioner of Internal Revenue had provided from time to time for the acceptance by collectors of claims in abatement of outstanding taxes. Eventually article 1032 of Regulations 45 was promulgated on January 28, 1921, construing the provisions of the Revenue Act of 1918, and contains the following:

"Art. 1032. *Claims for Abatement of Taxes Erroneously Assessed.—*

"Claims by the taxpayer for the abatement of taxes or penalties erroneously or illegally assessed or abated under remedial acts shall be made on form 47 (revised). They must be sustained by the affidavits of the parties against whom the taxes were assessed, or of other parties cognizant of the facts. When a tax has been assessed and turned over to the collector, the presumption is that the assessment is correct. The burden of proof in rebutting the presumption and showing that it was improperly or illegally assessed, or that relief should be given under a remedial statute, rests upon the applicant for abatement. The affidavits must therefore contain full and explicit statements of all the material facts relating to the claim in support of which they are offered and to the proper consideration of which they are essential. The legality of the claim is to be determined by the Commissioner upon the facts presented by the affidavits. The filing of a claim for abatement does not necessarily operate as a suspension of the collection of the tax or make it any less the duty of the collector to exercise due diligence to prevent the collection of the tax being jeopardized. He should, if he considers it necessary, collect the tax and leave the taxpayer

to his remedy by a claim for refund. See further Regulations No. 14 (revised). A collector may himself present once a month a blanket claim on form 47 (revised) for the abatement of taxes coming within certain classes of taxes erroneously assessed."

Of largely similar tenor, so far as the points involved in this case are concerned, is Article 1032 of Regulations 62, promulgated February 15, 1922, construing the provisions of the Revenue Act of 1921.

From these regulations it is plainly to be seen that all parties were instructed that the filing of a claim in abatement did not, at least necessarily, operate to suspend the running of the statute of limitations upon collection, but there was no rigorous laying down of a hard and fast rule, and much was left to the collectors' discretion.

Then came the Bowers Case, with an authoritative pronouncement in the following excerpt:

"Prior to the Revenue Act of 1918 there was no limitation against suit to collect income taxes. Section 250(d) of that Act (40 Stat. 1083 * * *) required assessment within five years after return, and prohibited the commencement of suit or proceeding to collect such taxes after that period. This bar was held to apply only in respect of taxes for 1918 and later years. Then section 250(d) of the Act of 1921 made the limitation apply against collection of taxes under all the earlier acts, and, in pursuance of a legislative purpose to require more prompt action upon the part of the Commissioner and collectors, prescribed the five-year period for determination and assessment of taxes under earlier acts but allowed only four year as to those for 1921 and succeeding years. The same purpose is shown by the requirement that the commissioner, within one year after request by their personal representatives, shall make assessments on income received by deceased persons. These stricter limitations applicable to taxes for the later period make against the petitioner's contention that the act sets no bar against collection by distraint. A reasonable view of the matter is that it was the intention of Congress by the clause here in question to protect taxpayers against any proceeding whatsoever for the collection of tax claims not made and pressed within five years." Bowers v. N. Y. & Albany Lighterage Co., 273 U. S. 346, 350, 47 S. Ct. 389, 390, 71 L. Ed. 676.

This case was decided February 21, 1927, and established as settled law that the statute of limitations, section 250(d) of the Revenue Act of 1921 (42 Stat. 227), applied to collection by distraint as well as to collection by suit.

At the time the collector received the claim in abatement in the present case and during the period collection was withheld pending the collectors' consideration of the claim, the Bowers Case had not been decided, and the collector therefore was unaware that, by withholding collection during the period of consideration of such claim, he was allowing the statute of limitations to run against collection by distraint, and that therefore, at the time he collected the sum in question, such collection was actually barred by the statute in its then present form. This procedure was in common practice prior to the Bowers decision above cited, and, faulty though it was, in the light of the Supreme Court's later determination, cannot be attacked as indicative of bad faith on the collector's part, or as charging him with any knowledge that the collection was erroneous and illegal. It is but reasonable to assume that the delay in collection was due to the filing of the plaintiff's claim in abatement and the collector's willingness to postpone further procedure during the period he was considering such claim. And while such indulgence had not a proper warrant in law, in view of the Bowers decision, the delay in collection, as a matter of fact, favored no one but the plaintiff, who, under strict procedure would have had to pay upon demand the full sum assessed against him and with no Board of Tax Appeals as yet in existence before which he might have taken his case.

From a review of the various facts and circumstances leading up to the enactment of section 611 above quoted, it appears to me that this statute was enacted for the very purpose of relieving situations similar to that of the instant case and removing a limitation which had proven a barrier against the refunding or collection of money justly due for federal taxes.

And since said section 611 is evidently designed to extend the statute of limitation for the collection of taxes, interest, etc., and does not concern the levying of taxes, the construction to be accorded its subject-matter is well expressed in Loewer Realty Co. v. Anderson (C. C. A.) 31 F.(2d) 268, 269, as follows:

"Statutes of limitation barring the collection of taxes must receive a strict construction in favor of the Government. Limitation will not be presumed, in the absence

of clear Congressional action. E. I. Du Pont de Nemours & Co. v. Davis, 264 U. S. at page 462, 44 S. Ct. 364, 68 L. Ed. 788; Bowers v. New York & Albany Lighterage Co., 273 U. S. at page 349, 47 S. Ct. 389, 71 L. Ed. 676."

█ In view of the meaning of section 611 as I read it there was laid upon plaintiff the burden of proving that the instant case does not come within the provisions of said section. It has failed so to do.

█ This present action was begun prior to the enactment of the Revenue Act of 1928, but said act made no specific exception of pending suits, and in such case the withdrawal by the United States of its consent to be sued deprives the courts of jurisdiction to enter judgments, even though such suits have been commenced before such withdrawal. United States v. Heinszen, 206 U. S. 370, 387, 27 S. Ct. 742, 51 L. Ed. 1098, 11 Ann. Cas. 688; Rafferty v. Smith, Bell & Co., 257 U. S. 226, 42 S. Ct. 71, 66 L. Ed. 208.

Before closing this memorandum, it will be fitting to refer to a few well-considered opinions appearing both before and since the argument had in this matter, and bearing upon the subject under discussion.

In Huntley v. Gile & Jenks (C. C. A.) 32 F.(2d) 857, 858, reversing Gile & Jenks v. Huntley (D. C.) 29 F.(2d) 209, the court says in part as follows:

"It is true that appellees did not thus in terms admit that the stay was effected by or ensued because of the pendency of the claim in abatement, but we are unable to escape the view that both sides intended to be understood as agreeing that the facts were such as to bring the case within the statutory condition, and that because of such understanding counsel for appellant refrained from offering evidence upon the point.

"While textually section 611 is open to construction, upon the whole we are left in no doubt that by it Congress intended to withhold from the taxpayer the right to have refunded money paid by him in the discharge of a valid tax, under the conditions therein stated, where the only objection which could be made to its collection was the expiration of the applicable period of limitation. Otherwise the section is without apparent meaning. To appellees' contention that effect may be given to it by holding that it was intended to apply only to cases of voluntary payment, the answer is that not only does the language fail to intimate such a limitation, but to the contrary the entire section relates to assess-ments which the taxpayers by claims, for abatement sought to escape and which therefore presumably they unwillingly paid. And, in reporting the bill which afterwards became the Revenue Act of 1928, the Ways and Means Committee made a statement explanatory of the conditions the proposed section 611 was designed to meet, which puts beyond all possibility of doubt the committee's conception of its purpose and intent.

* * *

"The further contention made is that so construed the statute is invalid because it purports to deprive plaintiffs of a vested right. But no vested right accrues to the taxpayer out of the running of the period of limitation for the collection of a valid tax"— citing Rafferty v. Smith, Bell & Co., 257 U. S. 226, 42 S. Ct. 71, 66 L. Ed. 208, and many other cases.

"Section 611 was to protect the government in respect to taxes due, but collected after limitation had expired. To that end it provides, as on settled principle it rightfully could, that therein the taxpayer is without right to claim overpayment, to plead limitations, to sue the United States directly or indirectly. Hence the statute protects the collector as well as the United States. Protection to the latter depends on protection for the former since judgments against him are paid by it. Section 611 applies to tax collections, past and future. Certainly the collector is within its spirit and letter by clear implication, and protected in respect to past, as in respect to future, collections by him made. Moreover, it is believed that any doubt or ambiguity in section 611 must be resolved against the taxpayer, even as they are when he claims any other exemption. See Bank of Commerce v. State of Tennessee, 161 U. S. 134, 146, 16 S. Ct. 456, 40 L. Ed. 645 [3 Am. Fed. Tax Rep. 2642]." Ada E. Pigott et al., Ex'rs of William Pigott, Dec'd, v. Burns Poe, Collector, etc., U. S. District Court, Western District of Washington, Northern Division. Opinion by Hon. George M. Bourquin, District Judge, November 4, 1929, 41 F.(2d) 273, 274.

"In my judgment, section 611 of the Act of 1928 [26 USCA § 2611] is applicable to the cases at bar. In all of them the assessments in question were made prior to June 2, 1924; claims for abatement were filed by the taxpayer (in three of them at the invitation of the Commissioner); and pending decisions on such claims, the collector made no attempt whatever to collect the taxes within the time remaining before the statutory

bar would fall. But plaintiff, in reliance on the case of United States v. Burden, Smith & Co., 33 F.(2d) 229 (C. C. A. 5th), followed in Cutcheon v. Rafferty (D. C. E. D. N. Y.) 34 F.(2d) 708, decided July 15, 1929, and Pepsin Syrup Co. v. Schwaner (D. C. S. D. Ill.) 35 F.(2d) 197, decided July 20, 1929, contends that the words 'and if the collection * * * was stayed,' in section 611 (26 USCA § 2611) require some form of compulsory stay binding upon the collector. In the Burden, Smith & Co. Case the court decided that 'stayed,' in a legal sense, is not interchangeable with 'delayed,' and necessarily connotes 'some act on the part of the taxpayer which would morally or legally tie the hands of the Commissioner and prevent collection of the tax'; and since article 1032 of regulation 62 of the Income Tax Bureau specifically provides that the filing of a claim for abatement did not of itself operate as a suspension of collection, the court held that some kind of formal stay is necessary within section 611 of the Act of 1928 (26 USCA § 2611).

"With all due respect, I have been unable to concur in this conclusion, and, in this district, am not bound to accept it. While taxing statutes are to be interpreted liberally in favor of the taxpayer, particular revenue acts which complement existing statutes must be interpreted with reference to such earlier acts and in the light of conditions resulting from their interpretation and administration. Section 611 of the Act of 1928 (26 USCA § 2611) cannot be construed to contemplate a judicial stay of collection, for it has long been settled that such an injunction will not issue (Rev. St. § 3224, 26 U. S. C. § 154 [26 USCA § 154]) even against collections after the statutory period. Ellay Co. v. Bowers, 25 F.(2d) 637 (C. C. A. 2d). Plaintiff contends, however, that a compulsory stay binding on the Bureau and the collector, similar to that formerly provided in section 279 of the Revenue Act of 1924 (43 Stat. 300, see 26 USCA § 1063, historical note), must have been intended. But as pointed out by Judge Dawson in Wright & Taylor, Inc., v. Lucas (D. C. W. D. Ky.) 34 F.(2d) 328, 332, decided July 26, 1929, section 611 (26 USCA § 2611), by its express terms, deals with taxes assessed prior to June 2, 1924, which was the effective date of the Revenue Act of 1924 [43 Stat. 253]. Accordingly, it seems necessary to examine the provisions of statutes enacted prior to that date relating to claims for the abatement of taxes. The only act making provision for such claims

is that of 1918, in which paragraph 14 of section 234 (40 Stat. 1079) authorizes a taxpayer at the time of filing his return to file a claim in abatement, provides that payment should not be required until such claim is passed upon; but the taxpayer must file a proper bond. This section was thus the only provision in any of the prior revenue acts which fell within the specific terms of section 611 in the Act of 1928 (26 USCA § 2611). * * *

"That section 611 (26 USCA § 2611) was intended to include more than those cases in which a formal claim in abatement and bond had been filed is further indicated in the light of the inapplicability of the time limitation to the liability on the bond. See United States v. John Barth Co., 279 U. S. 370, 376, 49 S. Ct. 366, 73 L. Ed. 743.

"In view of the prior legislation, the departmental regulations and practice thereunder, and the statements in the Committee reports, I am entirely clear that section 611 should be construed as applicable to those cases in which the filing of a claim in abatement had *in fact* resulted in an administrative delay in collecting duly assessed taxes, even though no formal 'stay' had been granted.

"I come then to a consideration of the constitutionality of section 611 as applied to the cases at bar. It is well settled that Congress has the power to ratify, by subsequent legislation, an unauthorized and illegal tax collection so as to give it retroactive validity. United States v. Heinszen, 206 U. S. 370, 27 S. Ct. 742, 51 L. Ed. 1098, 11 Ann. Cas. 688; Rafferty v. Smith, Bell & Co., 257 U. S. 226, 42 S. Ct. 71, 66 L. Ed. 208. But plaintiff insists that this power is conditioned both upon the power of Congress at the time of the unauthorized collection to lay the tax and upon an unequivocal manifestation of the legislative intent to ratify the unauthorized collection. It is urged that section 611 evidences no such intent, that in any event, after the statutory bar has fallen, the taxpayer has a vested right to recover the taxes, and that to deprive him of this right constitutes a taking of property without due process of law. * * *

"Section 611 (26 USCA § 2611) exempts from the operation of section 607 cases, such as those at bar, in which a claim in abatement had been filed and collection delayed. While no express mention is made of ratification, a reading of these three sections in the light of their purpose, as above stated, makes it abundantly clear that Congress intended to give to the collections already made (or to be

made within a year) whatever validity it was empowered to give. * * *

"Plaintiff's final contention that, inasmuch as the statute had run at the time of the collection, Congress was then and is still without the constitutional power to remove the bar, cannot be sustained. It is well settled that there is no vested right to rely upon a statute of limitation to defeat a debt or other personal obligation; the Legislature which imposed the bar may remove it. Campbell v. Holt, 115 U. S. 620, 6 S. Ct. 209, 29 L. Ed. 483; cf. Decker v. Pouvailsmith Corp., 252 N. Y., 168 N. E. 442, decided Oct. 15, 1929. That because of sovereign grace the expiration of the statutory period not only gave the taxpayer a defense, but also a right to recover taxes paid thereafter, does not, in my judgment, change the result. Nor is this a case like Davis v. Mills, 194 U. S. 451, 24 S. Ct. 692, 48 L. Ed. 1067, or Danzer v. Gulf & S. I. R. R. Co., 268 U. S. 633, 45 S. Ct. 612, 69 L. Ed. 1126, in which the grant of a right is conditioned upon its being exercised within a prescribed period; for the right of the United States to these taxes existed prior to and independent of the grant of a limitation statute for the repose of the taxpayer. This result is identical with that reached by the Circuit Court of Appeals for the Ninth Circuit in Huntley v. Gile, 32 F.(2d) 857, and by Judge Dawson in Wright & Taylor, Inc., v. Lucas, supra, in both of which cases the constitutionality of section 611 (26 USCA § 2611) was sustained. * * *

"The objection that section 611 is unconstitutional, because it leaves to the collector the arbitrary power to determine whether or not to collect the tax and thereby prevent the taxpayer from recovering it, cannot be sustained. The section specifically covers payments (which includes collections) made within one year after its enactment. As held in Ellay Co. v. Bowers, supra, such collection cannot be enjoined, and, by virtue of section 611, once the money has been collected, it may not be recovered solely because it was collected after the statutory period. That some taxpayers may escape because the collector does not act within the one year period is beside the point; it must be assumed that the executive department of the government will act with due diligence." Regla Coal Co. v. Frank K. Bowers, etc., U. S. District Court, Southern District of New York. Opinion by Hon. Julian W. Mack, C. J., 37 F.(2d) 373, 375, et seq.

Based upon the agreed statement of facts, the testimony of witnesses called by both plaintiff and defendant, and upon documents and papers introduced in evidence at the trial of this case, the following are adopted as the court's findings of fact:

(1) Plaintiff was at all times hereinafter mentioned, and now is, a corporation organized and existing under and pursuant to the laws of the state of New Jersey, with its principal office in the city of Paterson, county of Passaic, and state of New Jersey.

(2) This action was properly brought against the defendant, the United States of America.

(3) Plaintiff's corporation income and profits tax return on form 1120 for the calendar year 1918 was filed on or before June 16, 1919.

(4) An assessment of additional taxes for the calendar year 1918 was duly made within the period of limitation properly applicable thereto, by the Commissioner of Internal Revenue against this plaintiff, on February 27, 1920.

(5) On July 22, 1920, plaintiff duly filed on form 47 its claim for abatement of the additional taxes assessed as stated in the preceding paragraph.

(6) Plaintiff's said claim for abatement was, after due consideration by the Commissioner of Internal Revenue, allowed in part on a certificate of overassessment, No. 73277, schedule 77, dated March 8, 1922.

(7) Subsequent to the partial allowance of said claim for abatement, as stated in the preceding paragraph, said claim was further considered by the Commissioner of Internal Revenue at the express instance and request of this plaintiff, and that this additional consideration of said claim related to the balance thereof which had not previously been allowed on said certificate of overassessment and that this balance is the amount sought to be recovered in this suit.

(8) The filing of this said claim for abatement and the subsequent consideration thereof by the Commissioner of Internal Revenue stayed the collection of the tax which plaintiff now seeks to recover.

(9) This additional tax in the amount of $4,543.63, and accrued interest thereon amounting to $2,499, was collected from plaintiff by distraint on June 26, 1924, and such collection was made five years and ten days after plaintiff's income and profits tax return was filed.

844

(10) Plaintiff duly and timely filed its claim for refund of the sums stated in the preceding paragraph on June 29, 1927, and no action has ever been taken thereon by the Commissioner of Internal Revenue.

From the foregoing special findings of fact, made a part of the judgment herein, the following is reached as the court's conclusions of law:

The facts hereinbefore stated bring this case clearly within the provisions of section 611 of the Revenue Act of 1928, 45 Stats. at Large, at page 875 (26 USCA § 2611).

The plaintiff is not entitled to recovery, and its petition is hereby dismissed, with costs.