**NATIONAL PAPER PRODUCTS CO. v. UNITED STATES.**

No. 19528–L.

District Court, N. D. California.

Dec. 20, 1938.

John Francis Neylan and J. Paul Miller, both of San Francisco, Cal., for plaintiff.

Frank J. Hennessy, U. S. Atty., and Esther B. Phillips, Asst. U. S. Atty., both of San Francisco, Cal.

LOUDERBACK, District Judge.

The plaintiff sues for a refund of income taxes in the amount of $60,616.56, together with interest. Its claim is based on the contention that the collection was made after the statute of limitations had run, and that the limitation on collection had not been legally extended.

The original taxpayer was Carthage Tissue Paper Mills, a New York corporation, legally dissolved in 1921, all of whose assets and liabilities were assumed by the plaintiff prior to the dissolution. The plaintiff is a wholly owned subsidiary of the Zellerback Paper Company, and in its negotiations, conferences, etc., concerning these disputed taxes, it was represented by the officers and representatives of the parent corporation. The Carthage Mills filed its amended return for 1917, on May 28, 1918, and duly paid the taxes reported therein. Later, an "unlimited" waiver of the limitations or assessment and collection of additional 1917 taxes was given by the taxpayer. This waiver, and all others of the same class, were given a date for expiration, namely, April 1, 1924, by the Commissioner of Internal Revenue. See Internal Revenue Bulletin of January–June 1923, Cumulative Bulletin II-1, Order of April 11, 1923.

On February 28, 1924, a notice of deficiency in the 1917 taxes of the Carthage Tissue Paper Mills was given the plaintiff, as the successor in interest of the Carthage Tissue Paper Mills. The plaintiff immediately protested the proposed deficiency, both by letter and by telegram. On March 9th, the plaintiff telegraphed the Commissioner of Internal Revenue, asking for an oral hearing on the protest. On March 15th the plaintiff's representative telegraphed again, suggesting April 9th for the date of hearing. On March 17th the plaintiff's representative again telegraphed, suggesting April 9th as the date for the hearing at Washington of the cases of the plaintiff, the Pacific Paper Company, and the Zellerback Paper Company, which involved related questions. He urged the justice and equity of the taxpayer's position and asked that the Commissioner "issue the necessary order for withholding collection of assessments until hearing at Washington" and that by this course the "government cannot be injured", whereas the taxpayer would avoid unnecessary expenses of litigation. The Commissioner proceeded to assess the Carthage Tissue Paper Mills' additional taxes for 1917, at $79,368.15, and at the same time telegraphed the Collector at San Francisco to entertain a claim in abatement, and he advised the plaintiff he had done so. This was on March 19th, 1924. Under the procedure at that time, this had the effect of granting a stay of collection. A hearing was held at Washington, on about April 9th, 1924, as requested. The plaintiff appeared, submitted information and secured time to submit further data. Briefs were filed in August, and in October, 1924, and a second hearing or conference was held in Washington on October, 1926. The Commissioner's decision was given on April 9th, 1927, when he conceded part of the taxpayer's contentions, for he allowed the "claim in abatement" to the extent of $18,596.88. This action was apparently satisfactory to the taxpayer, for on April 20th, 1927, the plaintiff waived its right to appeal to the Board of Tax Appeals, and on August 4th, 1927, paid the remaining and unrebated portion of the assessment in the sum of $60,616.56. The plea that the statute of limitations barred collection after April 1, 1924, was not suggested until May 1930, when the plaintiff filed its claim for refund on the ground that collection was barred after April 1, 1924, and that no abatement claim was filed until May 1924, hence section 611 could not extend the period for collection. Section 611 of the Revenue Act of 1928, 45 Stat. 875, section involved, reads:

"If any internal-revenue tax * * * was, within the period of limitation properly applicable thereto, assessed prior to June 2, 1924, and if a claim in abatement was filed, with or without bond, and if the collection of any part thereof was stayed, then the payment of such part (made before or within one year after the enactment of this Act) shall not be considered as an overpayment under the provisions of section 607, relating to payments made after the expiration of the period of limitation on assessment and collection. * * *."

The only question of fact is, when was a claim in abatement made? It is conceded the assessment was timely. There is no dispute about the plaintiff's protest, its request for a hearing, its appeal for a stay of collection, the stay and the hearing, and the subsequent events. The authenticity of the documents relating to these matters is not contested. The claim in abatement was prepared, signed, and verified on March 28, 1924, at San Francisco. The office of

the Collector of Internal Revenue, at San Francisco, contains the original card index, giving the details of the claim in abatement, and noting the filing date as March 28, 1924. The claim was forwarded to the Collector of Internal Revenue at Syracuse, New York (where the tax originated) on May 21, 1924. The taxpayer's letter to the Syracuse Collector of Internal Revenue, forwarding the claim, states that the claim "has been held here awaiting receipt of bill". The Collector at San Francisco did not actually receive the assessment roll from the Commissioner until June 1924, although he and the taxpayer. were notified of the assessment and the amount of it as early as March 19th, 1924.

In deciding when and where the claim in abatement was filed, the lapse of fourteen years has increased the difficulties of a determination. The plaintiff's tax accountant, who dealt with the Collector's representatives, was not called as a witness. There have been three Collectors in office and a turnover in office personnel, so that it is impossible to say with whom the taxpayer's accountant dealt. Even if the witnesses were found, it is unlikely that they would remember details which, at the time, would have had no very great significance.

The matters which were, then, of chief importance was the fact that the taxpayer had asked for a stay of collection until his protest against the tax assessment could be heard, and the fact that the Commissioner agreed to hear his protest on April 9th and instructed the Collector to stay collection—all this occurring prior to April 1st, 1924. It is significant that the first brief filed by the taxpayer after the hearing on April 9th, 1924, recites in orderly fashion the events which lead up to the filing of the brief, and in the course of such recital states that the taxes were assessed, "the claim in abatement was then filed. A hearing was afterwards held with the Income Tax Unit".

I find this inconsistent with the plaintiff's present contention that no claim in abatement was filed until May 21st, 1924— six weeks after the first hearing held by the Income Tax Unit. Likewise, on the face of the claim in abatement, verified on March 28th, 1924, appears the statement that it "is filed in response to telegram from J. C. Bright, Deputy Commissioner, authorizing Collector to accept claim in

abatement". The Collector at Syracuse, New York, had received no such instructions and he had no telegram with which to confirm this statement in the claim, whereas the Collector at San Francisco had just such a telegram. Probably the taxpayer's representative had actually seen the telegram from Mr. Bright, in the Collector's office. The words "is filed" can reasonably refer to a filing of the claim at San Francisco. All of the records, and the statements of the plaintiff, meager as they are, are consistent with the notation on the card index of the Collector's office at San Francisco, that a claim in abatement was filed on March 28th, 1924.

I hold, therefore, that the defendant's exhibit "A" for identification (the card index record) should be admitted into evidence, and it is so received.

Finally, in testing the weight of the evidence introduced in this case, let it be supposed that this was a case involving the question whether a taxpayer's claim for refund had been filed in time, so as to have kept alive his right to sue for a refund. Assuming that the same evidence existed in favor of the taxpayer, which now exists in favor of the Government, I would feel constrained to resolve the question of fact in the taxpayer's favor, and to hold that the refund claimed was filed in time. Applying this same test, the evidence in the present case requires me to hold that the claim in abatement was filed before April 1st, 1924.

The principles of law involved are simple and well established. The burden is on the taxpayer to prove all the facts which establish an illegal collection by the Government. Niles Bement Pond Co. v. United States, 281 U.S. 357, 50 S.Ct. 251, 74 L.Ed. 901; Parrott Estate Co. v. McLaughlin, 9 Cir., 89 F.2d 188, 190. And the taxpayer must show that the case is outside the provisions of section 611 of the Revenue Act of 1928. Imhoff-Berg Co. v. United States, D.C., 43 F.2d 836; Hartwell Mills v. Rose, 5 Cir., 61 F.2d 441; Remington Rand v. United States, D.C., 57 F.2d 1069, affirmed, 3 Cir., 62 F.2d 1078. The burden of proving all the facts which would establish an illegal collection by the Government has not been sustained.

Therefore, let judgment enter, in accordance with this opinion, for the defendant, upon findings and conclusions of law.