RAFFERTY, COLLECTOR OF INTERNAL REV-
  ENUE FOR THE PHILIPPINE ISLANDS, *v.*
  SMITH, BELL & COMPANY, LIMITED.

SAME *v.* COMPANIA GENERAL DE TABACOS DE
  FILIPINAS.

SAME *v.* VISAYAN REFINING COMPANY.

CERTIORARI TO THE SUPREME COURT OF THE PHILIPPINE
ISLANDS.

Nos. 138, 140, 142.  Argued November 10, 1921.—Decided December
5, 1921.

1. Taxes on the value of exports from the Philippine Islands col-
   lected under a Philippine Act, effective July 1, 1916, while duties
   on such exports were forbidden by the Act of Congress of August
   29, 1916, c. 416, 39 Stat. 545, were legalized, ratified and confirmed
   by the congressional Act of June 5, 1920, c. 253, 41 Stat. 1015, 1025.
   P. 231.
2. This was within the power of Congress (*United States* v. *Heinszen
   & Co.*, 206 U. S. 370,) even where the parties taxed had obtained
   judgments for restitution, in the Supreme Court of the Philippines,
   before the date of the ratifying statute but where the judgments at
   that date were still reviewable and subsequently were reviewed in
   this court by certiorari.  P. 232.

40 Phil. Rep. 691, reversed.

Certiorari to the Supreme Court of the Philippine Islands for the review of judgments of that court holding illegal the collection of certain taxes and ordering the Col-

lector of Internal Revenue for the Islands, defendant below, to refund them to the present respondents.

*Mr. Grant T. Trent,* with whom *Mr. Cassius M. Dowell* was on the briefs, for petitioner.

*Mr. Clarence B. Miller,* with whom *Mr. W. H. Lawrence, Mr. J. G. Lawrence* and *Mr. Frederick C. Fisher* were on the briefs, for respondents.

The transactions involved were exports.

The taxes in question were not legalized by the Act of Congress of July 1, 1916, 39 Stat. 286; nor by the Act of June 4, 1918, 40 Stat. 597.

The Act of Congress of June 5, 1920, 41 Stat. 1025, can not have the effect of confiscating the judgments under review. The Smith, Bell & Company case was commenced in the Court of First Instance of Manila in February, 1918; in July, 1918, that court ordered the entry of judgment; both parties appealed; the Philippine Supreme Court entered its judgment in March, 1920. The Compania General case was commenced in the Court of First Instance January 23, 1917; judgment in favor of respondent was rendered November 26, 1917; both parties appealed to the Supreme Court and judgment there was given in favor of respondent March 16, 1920. The Visayan Refining Company case was commenced in the Court of First Instance on January 20, 1917; judgment in favor of respondent was entered by that court on November 26, 1917; both parties appealed to the Supreme Court and judgment there was given in favor of respondent March 18, 1920. By these judgments respondents became entitled to recover from petitioner the amounts which the petitioner had exacted as taxes under the ostensible authority of § 1614, Act No. 2657.

The decisions upholding retrospective statutes to cure irregularities as against claims not reduced to judgment, of which many are quoted or cited by petitioner, do not

require particular notice. All are distinguishable in that they do not involve the overthrow of judgments, and most of them present other obvious and vital differences that make them inapplicable herein. None of them goes so far toward being in point as *United States* v. *Heinszen & Co.*, 206 U. S. 370, and if that case is not controlling, all the others fall with it.

The proposition that a statute may divest rights established by a judgment is so abhorrent to our fundamental principles and to natural justice, as well as to familiar constitutional limitations, that there are few instances in our jurisprudence where the attempt has been made and passed upon. Nevertheless, there is plain condemnation of the theory in the decisions of this court. *McCullough* v. *Virginia*, 172 U. S. 102, 103; *Stephens* v. *Cherokee Nation*, 174 U. S. 445, 478; *Pennsylvania* v. *Wheeling Bridge Co.*, 18 How. 421, 431; *Haley* v. *City*, 68 Pa. St. 45; *Taylor* v. *Place*, 4 R. I. 337; *Sanders* v. *Cabaniss*, 43 Ala. 184; *Lawson* v. *Jeffries*, 47 Miss. 702; *Griffin* v. *Cunningham*, 20 Gratt. 54. While *United States* v. *Heinszen & Co.* holds that a congressional ratification may destroy a mere right of action, practically overruling in this respect *DeLima* v. *Bidwell*, 182 U. S. 1, yet the reasoning, by distinction, compels the conclusion that a claim reduced to judgment is immune.

The immunity of respondents' judgments from legislative confiscation does not depend upon their finality in the sense of not being subject to judicial review. If the interposition of this court had the effect of vacating the judgments and bringing the causes here to be tried *de novo*, the case might, arguably, be different; but, upon the allowance of the writ, the judgment is reviewed " as if brought up by writ of error," and it is precarious only to the extent that error may be found. If the judgment is declared free from error, its affirmance by this court will in no way enhance its value or change its character. The ultimate

question is whether the judgments are " property " of respondents, such as may not be taken without due process; the review herein is an examination of respondents' title to the property—not a proceeding from which such title may arise. A judgment creditor in a case reviewable for error may be divested of his property in the judgment, but only by " due process of law "—which judicial reversal is, and legislative confiscation is not.

There is a fundamental difference between the ratification sustained in the *Heinszen Case,* and the ratification asserted by petitioner herein, in that the one supplied a mere absence of prior authority, while the other is invoked to cure an express denial of authority. This difference is inferentially recognized in the *Heinszen* opinion, p. 382.

It is obvious that where the principal has denied authority to his agent and third parties have relied upon such denial, the principal may not thereafter retroactively give validity, in prejudice of such third parties, to acts of the agent in contumacious exercise of the power denied.

The distinction is clear between an act of Congress withdrawing the Government's consent to be sued, and an act which pretends to relieve one individual from his judgment debt to another.

Respondents' vested rights in their judgments are analogous to vested rights secured by exemption from taxation. *Choate* v. *Trapp,* 224 U. S. 665; *Ward* v. *Love County,* 253 U. S. 17.

Even in the Philippine Islands no person may " be deprived of life, liberty or property without due process of law."

From a misunderstanding of the Insular Cases and certain subsequent decisions of this court there has arisen a wide-spread belief that Congress has power unlimited to legislate for the Insular Possessions. This belief has no foundation in the decisions of this court, and none in principle.

If there is no decision of this court affirmatively applying any guaranty or limitation of the Constitution in the Philippine Islands or Porto Rico, the reason is plain; the occasion has not arisen.

In cases wherein insular legislatures have encroached upon personal rights, the decisions have been based upon the guaranties of congressional organic laws, and the court has avoided as unnecessary determining whether the corresponding provisions of the Constitution would have been applicable. *Kepner* v. *United States*, 195 U. S. 100, 124.

On the other hand, the power of Congress over the Insular Possessions is derived from the same provision of the Constitution—Art. IV, § 3, par. 2—which supported the jurisdiction of Congress in the Territories which later became States. And it has been held that in legislating for those Territories Congress was not wholly exempt from constitutional limitations.

It has been held that the uniformity clause of Art. I, § 8, does not apply to duties imposed by Congress in the Possessions, because the section requires uniformity only "throughout the United States," and the Possessions are not a part of the United States. *Downes* v. *Bidwell,* 182 U. S. 224, 262. But in that case even the majority of the court conceded that the Constitution contains limitations which operate upon the power of Congress wherever exercised. See also, *Hawaii* v. *Mankichi,* 190 U. S. 197; *Dorr* v. *United States,* 195 U. S. 138.

The grounds of dissent in the Insular Cases show that all of the Justices were agreed that the "general prohibitions" in support of "natural rights" limited the power of Congress to legislate for the Possessions.

Among these effective limitations is certainly that of the Fifth Amendment. *Fletcher* v. *Peck,* 6 Cr. 87.

The ratification by Act of June 5, 1920, covers only the period between July 1 and August 29, 1916.

If petitioner's collection of the taxes was unlawful, the award of interest was not error.

This is not an action against the Government.

MR. JUSTICE McREYNOLDS delivered the opinion of the court.

These cases turn upon the same question and were ar-. gued together. In our view they can be disposed of by applying the Act of Congress, approved. June 5, 1920, c. 253, 41 Stat. 1015, 1025, without passing upon any other point.

Acting under ostensible authority of § 1614, Act 2657, Philippine Legislature, approved February 24, 1916, and effective July 1 thereafter, the Collector of Internal Revenue for the Philippine Islands levied and collected the taxes here challenged upon the value of certain commodities exported from those Islands by respondents between October 1, 1916, and September 30, 1917.

The Supreme Court of the Islands gave judgments for the respondents during March, 1920. Petitions for writs of certiorari filed here in September thereafter and within time prescribed by law, were allowed. Act of Congress, approved September 6, 1916, c. 448, 39 Stat. 726.

Section 1614, Act 2657. "All merchants not herein specifically exempted shall pay a tax of one per centum on the gross value in money of the commodities, goods, 'wares, and merchandise sold, bartered, exchanged, or consigned abroad by them, such tax to be based on the actual selling price or value at which the things in question are disposed of or consigned, whether consisting of raw material or of manufactured or partially manufactured products, and whether of domestic or foreign origin. . . ."

Section 11, Act of Congress, approved August 29, 1916—Autonomy Act—c. 416, 39 Stat. 545. " That no export duties shall be levied or collected on exports from the Philippine Islands, but taxes and assessments on

property and license fees for franchises, and privileges, and internal taxes, direct or indirect, may be imposed for the purposes of the Philippine government and the provincial and municipal governments thereof,-respectively, as may be provided and defined by acts of the Philippine Legislature, and, where necessary to anticipate taxes and revenues, bonds and other obligations may be issued by the Philippine government or any provincial or municipal government therein, as may be provided by law and to protect the public credit. . . ."

The Act of Congress, approved June 5, 1920, *supra,* provides: " The taxes imposed by the Philippine Legislature in section 1614 of the Act Numbered 2657, enacted by that body on February 24, 1916, are legalized and ratified, and the collection of all such taxes made under or by authority of such Act of the Philippine Legislature is legalized, ratified, and confirmed as fully to all intents and purposes as if the same had by prior Act of Congress been specifically authorized and directed."

We think the language last quoted was intended to apply to the taxes collected from respondents, here called in question, and that it is sufficiently broad to include them. That the enactment is within the power of Congress necessarily follows from the doctrine announced in *United States* v. *Heinszen & Co.,* 206 U. S. 370, 386, *et seq.*

The judgments below were subject to review here and ·the mere fact that the causes had proceeded to such stage gave respondents no higher rights than those possessed by Heinszen & Company, whose action to recover, although instituted prior to the passage of that enactment, was held to have been barred by the Act of June 30, 1906, c. 3912, 34 Stat. 636.

The judgments of the Supreme Court so far as adverse to Rafferty, the Collector, must be reversed and judg-

ments entered here in his favor but without any allow-ance for costs either in this court or in the courts below.

*Reversed.*

. Mr. Justice Clarke concurs in the result.