DANIEL REEVES, Inc., v. ANDERSON, Collector of Internal Revenue.
No. 340.

Circuit Court of Appeals, Second Circuit.
July 21, 1930.

Charles H. Tuttle, U. S. Atty., of New York City (Walter H. Schulman, Asst. U. S. Atty., of New York City, of counsel), for appellee.

Herman Goldman, of New York City (Elkan Turk and Arthur Rothstein, both of New York City, Benjamin Wiener, of Brooklyn, N. Y., and Donald Bourne, of New York City, of counsel), for appellant.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

The taxpayer filed its return for 1919 on March 11, 1920, and during the year paid the taxes disclosed. The Commissioner assessed a deficiency in March, 1924; the collector made demand for it on April 5, 1924; the taxpayer filed a claim for abatement on the sixteenth of that month. There matters rested without change until September 28, 1925, when the claim was rejected and on November 14, 1925, the taxpayer paid the deficiency with interest under threat by the collector. After proper preliminary steps this suit was brought against the collector in November, 1927. The question is whether the delay in collecting the tax from March 11, 1920, the date of the return, to November 14, 1925, made the collector's act a tort on which a cause of action arose for money had and received.

In spite of the extraordinary differences in judicial opinion which the situation has evoked—differences which only the Supreme Court can eventually settle—the underlying facts are not complicated. Section 250. (d) of the Revenue Act of 1918 (40 Stat. 1083) set a limitation of five years after return upon the Commissioner's power to "determine and assess" the amount of the tax. The same section in the Revenue Act of 1921 (42 Stat. 265) reduced the period to four years; but kept it at five as to assessments under the act of 1918. Until 1924 the Treasury had no longer period within which to collect taxes through the courts, than to assess them, so that, if the Commissioner assessed the tax on the last day of the proper period, he could begin no "suit or proceeding in court" to collect it. He had not in practise paid much attention to this feature of the law because he supposed until February, 1927, that he had power for an indefinite time after assessment to distrain, and this was ordinarily remedy enough. The decision of the Supreme Court in Bowers v. N. Y. & Albany Lighterage Co., 273 U. S. 346, 47 S. Ct. 389, 71 L. Ed. 676, which held that dis-

tress was barred along with "suits and proceedings," disappointed this assurance and there was thereafter no way to collect, once the time to assess had expired. Sections 607 and 611 of the Revenue Act of 1928 (26 USCA §§ 2607, 2611)· were passed after this decision; the first made the assessment or payment of any tax after the period of limitation had expired an "overpayment" and gave the taxpayer a "credit or refund" for it, thus leaving matters as they had been, except to repeal section 1106 (a) of the Revenue Act of 1926 (26 USCA § 1249 note). The second section excepted from the operation of the first all taxes assessed before the act of 1924 went into effect, upon condition that the taxpayer had filed a claim for abatement which had stayed collection.

The distinction was a fair one. Section 278 (d) of the Revenue Act of 1924 (26 USCA § 1061 note) had given the Treasury six years after assessment to collect, and while it took until January, 1929, finally to settle it that this applied only to assessments made after June 2, 1924, the effective date of the act of 1924 (Russell v. U. S., 278 U. S. 181, 49 S. Ct. 121, 73 L. Ed. 255), that had apparently been already divined as a possibility. So it followed that while the Treasury had six years after assessment to collect taxes assessed after June 2, 1924, it had only four or five years from the return as to all assessed theretofore. Although the Commissioner had misconceived the law as to these, Congress made no effort to reclaim them by reimposition; the delay remained a final bar. Only in case the taxpayer had positively caused the Treasury's inaction by demanding a rehearing, was his advantage taken from him. Congress refused to convert indulgence into immunity; certainly nothing could be more reasonable. We have only to determine whether the plan conceived in this spirit has miscarried.

■ Specifically the arguments by which this exemption is sought to be secured are, first, that collection was not "stayed" by the claim for abatement. If by this is meant that the claim raised no legal bar to collection, the argument is unanswerable; it did not. So far as we can discover no statute before 1924 gave such an effect to a claim for abatement except section 234 (a) (14) of the Revenue Act of 1918 (40 Stat. 1079). This had to be filed with the return and not in response to an assessment, and was limited to inventory losses and rebates. Section 611, Revenue Act 1928, certainly did not refer to these.

Section 279 of the Revenue Act of 1924 (26 USCA § 1063 note) did indeed provide for a compulsory stay of collection, but only in the case of jeopardy assessments levied under section 274 (d) of that act (26 USCA § 1051 note). Aside from the limited scope of this section, it did not reach the only assessments touched by section 611, those levied before June 2, 1924. Thus, if we construe "stayed" to mean a legal bar, we should give the section no scope whatever. Patently it must refer to those cases in which the collector did not proceed with enforcement while the Commissioner was engaged in passing upon the claim for abatement; such a stay has in practise been recognized as ancillary to the Commissioner's power to remit (title 26, § 149, U. S. Code [26 USCA § 149]). Had he insisted upon collection before disposing of the claim, the taxpayer would with some justice have been vocal in protest. It is ungenerous now to complain that he did not do so.

■ Next, the plaintiff says that, if "stayed" means a voluntary stay, the record must show that the claim was the cause of it, and does not. The assessment was collectible as soon as made; no effort was in fact made to collect it till the claim was disposed of; the sequence of the two suggests a causal relation between them. Moreover, to suppose that the collector meanwhile withheld action for any other reason than because his collection might turn out to be unwarranted, is to assume that he was slack in his duty; we are entitled to assume the opposite. Article 1032 of Regulations 45 puts collection in his discretion in such circumstances; his inaction would have been without excuse except for the claim. Regardless of the eventual burden of proof on the issue, the presumption is that the delay was caused by the claim; and there was no proof to meet it.

The next point demands more attention. The argument runs as follows: Section 607, Revenue Act 1928, provides that a tax assessed or paid after the period had expired should be "credited or refunded." Section 611 is merely an exception from this provision; it does not give any right to the Treasury to hold money which it had no right to hold before. Section 607 was passed to be rid of the effect of section 1106 (a) of the Revenue Act of 1926, which had provided that although the expiration of the period of limitation of a tax extinguished the debt, the Commissioner should not credit or refund it unless it was not in fact due when the taxpayer paid it. This section we held not

to prevent an action for money had [Ellay Co. v. Bowers (C. C. A.) 25 F.(2d) 637]; it follows that at that time the taxpayer could have got a "refund" by action, though he could not from the Commissioner. All that section 607 has done is to restore the administrative remedy which section 1106 (a) took away, leaving the taxpayer in possession of all remedies, except against the Commissioner (section 611), in cases where he had induced the delay. Since, however, the remedy of an action at law existed all along, and since it did not therefore need any assistance from section 607, section 611 is irrelevant. It was not intended as an affirmative limitation upon pre-existing remedies.

This argument is not dependent alone upon the word "refund" in section 607; it has a broader historical basis, and it must be confessed that it is plausible. We think it impossible however so to read section 611 for several reasons. Section 3226 of the Revised Statutes, as amended in 1926, Revenue Act 1926, § 1113 (a), 26 USCA § 156, requires the filing of a claim for refund or credit as a condition precedent to suit against the collector. It certainly would be an unusual thing to require as a condition precedent an application which by hypothesis could not be granted. But even if we assume that Congress might have wished still to impose the abortive claim for abatement as a condition on the action, the consequences are absurd. Nobody has a claim for refund who has not a possible right of action. The time for presenting the claim is three or four years (title 26, U. S. Code, § 1065 [26 USCA § 1065]), and the time within which to sue is five (Rev. St. § 3226, as amended), so that the time to file the claim expires first. The effect of section 611, which forbad such claims, would only be that taxpayers should not get cash from the Commissioner which they still could get by way of judgment. It is difficult to conjure any reason which Congress could have had for forbidding the more commodious way of settling such controversies, and still exposing the Treasury to actions at law which must result in exactly the same thing. It would take the strongest possible language to force us to such a conclusion.

■ The language of section 607 does not go far enough. It makes the taxes described an "overpayment"; that alone was enough to create a cause of action at law, though it was not necessary, as things stood. The second clause in the sentence changed the situation formerly created by section 1106 (a) of the Revenue Act of 1926, the effect of which had been to drive the taxpayer to suit. Section 611 enacted that the excepted assessments and payments should "not be considered as an overpayment," and in so doing positively struck the foundation from under any recovery by action, by credit or by refund; it was more than an exception to the second clause of section 607; it dealt with the merits of the recovery as well as with the remedies available.

■ This disposes of the only questions that seem to us important, for we cannot so regard the argument against the validity of the statute, though it is very earnestly presented. Taxpayers in the plaintiff's position do indeed lose an immunity once acquired; they lose it—we will assume arguendo—by the mere fiat of the statute; Congress has seen fit in effect to impose the tax upon them de novo at a time long after the events took place on which it depends. This is charged to be in violation of the Fifth Amendment, and so it might be, if there had been no original tax, no claim for abatement, no delay of the Treasury in the disposal of that claim, and a consequent loss of all remedies. Were the Fifth Amendment a remorseless pattern which all legislation must fit, the argument might even so be troublesome; might indeed be conclusive. But constitutional limitations are not indifferent to the occasions of the statutes they affect. They represent a mood rather than a command, that sense of moderation, of fair play, of mutual forbearance, without which states become the prey of faction. They are not the rules of a game; their meaning is lost when they are treated as though they were. It is quite true that the section took away a defense from the plaintiff; he is right to complain unless we can question the kind of defense it was. The moment we do, it must appear to any fair person that he ought not to have it. What the Treasury lost through its procrastination, it lost forever, even though it was under an honest mistake as to its remedies. If the taxpayer did nothing to provoke or encourage its delay, perhaps it was fair that his liabilities once dead should not be revived; there is a deep instinct behind any statute of limitations. But if he asked for reconsideration because he had been unlawfully treated, and if his complaint was entertained, then by virtue of an equally deep instinct, it is unfair to allow him to treat that conduct as a fault which he was the means of pro-

curing. He ought not in short to be able to avoid his share of the public burdens, because the authorities consented to give him a considerate hearing. It does not help to call the bar of the statute a vested right; that is at best a figure of speech, which does now hallow everything that is past, a default in pleading as well as a homestead. One's grip on an antagonist, enmeshed in a net of statutes, may be a vested right, but it is not a constitutional right. The Supreme Court went much further in United States v. Heinszen, 206 U. S. 370, 27 S. Ct. 742, 51 L. Ed. 1098, 11 Ann. Cas. 688, and Rafferty v. Smith, 257 U. S. 226, 42 S. Ct. 71, 66 L. Ed. 208.

Nor does it make any difference that the Senate struck out the House provision for the future collection of such assessments within a year. The argument is that the tax is not uniform under section 8 of article 1 of the Constitution, and also apparently that it is discriminatory. As to the second, we can see no reason why Congress should not draw the line between what had been closed and what had not. If the Treasury had for four years or more failed to collect, that might be thought time enough even though the taxpayer had been the cause of the delay; there comes a time to end all things. The whole notion of a limitation involves some discrimination, which in actual incidence must appear, and indeed be, arbitrary. As for section 8 of article 1 it has repeatedly been held to require only territorial uniformity. The Head Money Cases, 112 U. S. 580, 595, 5 S. Ct. 247, 28 L. Ed. 798; La Belle Iron Works v. U. S., 256 U. S. 377, 392, 41 S. Ct. 528, 65 L. Ed. 998.

We have quite deliberately avoided the citation of those decisions which have hitherto dealt with these questions. Those in the District Court are so many and so conflicting that it would serve no purpose merely to enumerate them. In the Circuit Courts of Appeal at present the plaintiff would win in the Fifth [U. S. v. Burden, Smith & Co., 33 F.(2d) 229], and lose in the Ninth [Huntley v. Gile & Jenks, 32 F.(2d) 857; Goodcell v. Graham & Foster, 35 F.(2d) 586]. Apparently he would also lose in the Court of Claims, though we have not been favored with the citation in an available form. Gotham Can Co. v. U. S., 37 F.(2d) 793. So far as the courts have gone, there is therefore a preponderance of authority in favor of the decision below.

Judgment affirmed.