SUNLAND BISCUIT COMPANY, INC., Petitioner, *v.* MINIMUM WAGE BOARD OF PUERTO RICO, Respondent.

No. 103. Argued November 4, 1947.—Decided March 10, 1948.

*Luis E. Dubón* and *Otero Suro & Otero Suro,* for petitioner. *Lino J. Saldaña* and *Ismael Soldevila* for respondent.

MR. JUSTICE MARRERO delivered the opinion of the Court.

ON RECONSIDERATION

In accordance with the provisions of § 6 of Act No. 8 of April 5, 1941 (Laws of 1941, pp. 302, 310)[1], the Minimum Wage Board appointed, on June 14, 1944, a Minimum Wage Committee to investigate the working conditions in the bread, biscuit, pastry, and flour-paste industry, and to report its findings to the Board on the minimum wages, maximum hours of labor, and working conditions which should prevail in said industry. On October 11 following, said committee submitted to the Minimum Wage Board a report containing its findings and recommendations. In connection with that report, the Board held public hearings in the city of San Juan during several days of the months of November and December, 1944, in order to hear the interested parties and the public in general regarding the recommendations made by the said committee. The Sunland Biscuit Company, Inc., petitioner herein, appeared at said hearings, introduced testimony, and raised the objections and exceptions which are set forth in the transcript of the evidence sent up to this Court. After the hearings were concluded, the Minimum Wage Board, on April 30, 1945, issued Mandatory Decree No. 9 which was promulgated on May 5, 1945, and took effect 60 days after the latter date.

On May 19, 1945, the Sunland Biscuit Company, Inc., filed with the Minimum Wage Board a motion for reconsideration of Mandatory Decree No. 9, and by an order of August 1 of the same year, which was notified to the petitioner 25 days later, its motion was denied. Feeling aggrieved by that decision, the Sunland Biscuit Company, on August 31, 1945, instituted a proceeding in this Court, pursuant to the

---

[1] This Section has been amended by Acts No. 217 of May 11, 1945 (Laws of 1945, pp. 680, 698), and No. 451 of May 14, 1947 (Laws of 1947, pp. 950, 956). Said amendments, however, are not relevant to any of the questions discussed in this opinion.

provisions of subdivision (*d*) of § 24 of Act No. 8 of 1941, as amended by Act No. 217 of May 11, 1945 (Laws of 1945, pp. 680, 698). In its petition it maintained that the Minimum Wage Board had acted without authority and in excess of its powers in issuing and promulgating Mandatory Decree No. 9 and in rendering its decision of August 1, (*a*) because it violated § 12 of the Minimum Wage Act, as amended, since by establishing two zones with different minimum wages for each of them in an industry which, due to the nature of the sale, distribution, and consumption of its products, lacks any jurisdictional differentiation in its market, it grants a marked competitive advantage to the factories established in the second zone over that of the petitioner, which is the only one of its kind established in the first zone; (*b*) because the difference in hourly wages established for the two zones operates as a discrimination against the petitioner and in favor of the factories established in the second zone, all of which sell and distribute a substantial part of their output within the first zone, without having to pay the wages fixed for the latter zone; (*c*) because, although in Section H–1 of Mandatory Decree No. 9 it is provided that any employer engaged in the manufacture of bread, who has a bakery established in the second zone and who sells the whole or part of his output in the first zone shall be bound to pay the minimum wages pertaining to the latter zone, said decree does not contain any similar provision as to employers engaged in the manufacture of biscuits; (*d*) because the Board acted in excess of its powers in fixing different wages in the biscuit manufacturing industry and in not providing that the wages pertaining to the first zone should be paid by the manufacturers of the second zone upon selling the whole or part of their output in the first zone, thus eliminating the competitive advantage granted to the manufacturers of the second zone, who flood with the sale of their products the territorial jurisdiction of the first zone.

For a better understanding of the allegations of the petitioner and of the questions raised by it, we deem it advisable to copy below the pertinent part of the Mandatory Decree No. 9 involved in this proceeding:

"B. Minimum Wages.

"Every employee shall be paid wages at a rate not less than the rate per hour stated below, according to the branch of said industry and the zone or type of establishment (defined further on in subdivision (c)), in which his work is performed.

"1. Bread . . .

"2. Biscuits:

| Occupation | Zone 1 | Zone 2 |
|---|---|---|
| "Skilled workmen | $0. 45 | $0. 35 |
| "Semiskilled workmen | 0. 35 | 0. 25 |
| "Unskilled workmen | 0. 25 | 0. 20 |

"C. Zones:

"For the purposes of this decree, there are established in Puerto Rico two zones, which respectively comprise: the first, the municipalities of San Juan and Río Piedras; and the second, the remaining portion of the territory of Puerto Rico. . . ."

On November 7, 1945, we issued an order requiring the Minimum Wage Board to send up to this Court, within the term of 10 days, the original record of this case and we set December 17, 1945, for the hearing of the proceeding. After the corresponding briefs were filed by both parties, that hearing took place on May 27, 1946. On June 25, 1947, this Court rendered judgment setting aside Mandatory Decree No. 9 insofar as applicable to the biscuit manufacturing industry, and remanded the case to the Minimum Wage Board for further proceedings not inconsistent with the opinion on which the judgment was based. It should be stated that said opinion was delivered by Mr. Chief Justice Travieso and that Mr. Justice de Jesús and the undersigned concurred therein. Mr. Justice Todd, Jr., and Mr. Justice Snyder dissented, the former rendering a dissenting opinion in which the latter concurred.

After requesting and obtaining a temporary withholding of the mandate, the respondent, on July 19, 1947, filed a lengthy motion for the reconsideration of the judgment, and 10 days afterward we ordered the Board to serve notice of its motion on the petitioner, and set a new hearing for November 4, 1947, meanwhile suspending the judgment rendered by us on June 25.

In the brief filed by the Minimum Wage Board and at the hearing held on November 4, the Board essentially contended: (I) that Act No. 451 of May 14, 1947 (Laws of 1947, p. 950), validated and ratified the decree, the validity of which is challenged in the present proceeding; (II) that the difference in minimum wage rates resulting from the establishment of two zones for the biscuit industry does not create the "competitive advantage" prohibited by § 12 of Act No. 217 of 1945, despite the fact that Decree No. 9 contains no provision which would compel the manufacturers of the second zone to pay to their employees the minimum wages corresponding to the first zone in case the whole or part of their output is sold therein; and (III) that the Board in expressly deciding that Decree No. 9 does not establish a competitive advantage within the specific economical conditions under which the biscuit industry operates in Puerto Rico, made a finding of fact which is conclusive under § 24(b) of the Minimum Wage Act.

■■ In our judgment, both the third and first contentions of the Board are correct.

Section 24 (b) of Act No. 8 of 1941 (Laws of 1941, pp. 302, 322)[2] provides in its pertinent part that:

*"The findings of fact at which the board acting within its powers may arrive shall, in the absence of fraud, be conclusive; Provided,* That any person directly or indirectly aggrieved by any decree or

---

[2] Section 24 has been amended by Acts No. 217 of May 11, 1945 (Laws of 1945, pp. 680, 698) and No. 451 of May 14, 1947 (Laws of 1947, pp. 950, 968). Said amendments, insofar as now pertinent, are substantially similar to the provisions of the Act of 1941, and they were not in force in 1944, when the Minimum Wage Board made its findings of fact in this case.

rule of the board may apply to the latter for reconsideration within twenty (20) days after the promulgation of such decree or rule. The petition for reconsideration shall be made under oath and the same shall contain the grounds on which it is based; *Provided,* That reconsideration shall be granted only for one of the following causes:

*"That the board acted without authority or beyond its powers; or that the decree, rule, or order was obtained through fraud.*

"A review of the final decision which the board may render in the matter, may be obtained in the Supreme Court of Puerto Rico within a term of fifteen days after the service thereof. *The court may affirm or set aside the decision of the board; but the setting aside shall be only for one of the following reasons:*

*"That the board acted without authority or beyond its powers; or that the decree, rule or order was obtained through fraud."* (Italics ours.)

According to this Section, "the findings of fact at which the board acting within its powers may arrive shall, in the absence of fraud, be conclusive," and our power to set aside its decrees is limited to cases in which the Board has acted "without authority or beyond its powers, if said question were specifically raised at the hearing held before the Board, its chairman, or the receiver of evidence, or that the decree, regulation, resolution, or order was obtained through fraud." In the case at bar, the conclusion reached by the Board to justify the fixing of different wages for the first and second zones in the biscuit industry is supported by the evidence which it had before it, and since it has not been alleged or proved that the decree was obtained through fraud, we cannot and should not disturb the same.

In deciding the motion for reconsideration filed by the petitioner, the Board stated in part the following:

" . . . There is no complaint, on the part of the petitioner, as to compliance with the requirement of uniformity in each of the two zones established. Its contention is based exclusively on the fact that due to the difference in salaries, an advantage is produced in favor of its competitors in the other district.

"The difference between both zones may be readily seen. The former affords the manufacturer a better opportunity and wider

facilities for the development of his business. As a matter of fact, it has been shown that employees of the second district are paid lower wages than those of the first, in spite of which the producers of both zones have kept their business going and even increased it. The saving which the employers of the second zone derive from the small difference in wages that the decree established between both zones is more than set off by other elements. In this zone the workmen can not receive the same wages as those of the other zone because marketing opportunities are less, as well as a good selling price, availability of raw materials facilities of transportation and others.

" \* \* \* \* \* \* \*

"By establishing the slight difference in the minimum wage for both zones, the board merely followed the distinction fixed beforehand by the characteristics, situation, and special circumstances of the business in either zone. . . . "

The circumstances, elements, and facts on which the Board based the various provisions of Decree No. 9 are, in our judgment, sufficient to support said decree in its entirety.

 We have already stated that on June 25, 1947, this Court rendered judgment in this case and that, on July 19 following, the motion for reconsideration under discussion was filed by the respondent. In the meantime, Act No. 451 of 1947 (Laws of 1947, p. 950) became effective. Section 2 of this amendatory Act, literally copied, reads as follows:

"Section 2.—It is hereby provided that all the decrees, orders, rules, and regulations promulgated by the Minimum Wage Board prior to the approval of this Act, *shall continue in full force and effect, and all the acts and actions of the officials and employees of the said board, pursuant to the provisions of Act No. 8 of April 5, 1941, as subsequently amended, are hereby validated and ratified.*" (Italics ours.)

As we have already seen, the respondent insists that the approval of this Act prior to the date on which our judgment was rendered, validated and ratified Decree No. 9. The respondent is also correct in this particular.

Said Section clearly and definitely validates and ratifies all the acts carried out by the Minimum Wage Board under

352

the Act of 1941, as subsequently amended. The Legislative Assembly of Puerto Rico, as we have already decided in various cases, has the power to enact remedial statutes of this kind. See *Compañía Ron Carioca* v. *Tax Court,* 67 P.R.R. 662, 666; *Pillich* v. *Fitzsimmons, Auditor,* 59 P.R.R. 104, 107; and cases cited therein. The fact that the amendatory Act of 1947, by express provision of its § 5, took effect on July 1 of that year does not alter the situation. It is true that our judgment was rendered on June 25, 1947, but the same had not yet created any right in favor of the petitioner. Moreover, said § 2 of the Act of 1947 specifically refers to decree issued prior to the approval of Act No. 451, and the latter was approved on May 14, 1947, or prior to the rendition of the judgment of this Court. Under those circumstances, the curative statute was entirely valid and constitutional. *Compañía Ron Carioca* v. *Tax Court, supra; Swayne & Hoyt, Ltd.* v. *United States,* 300 U.S. 297, 301; *Hodges* v. *Snyder,* 261 U.S. 602; *Charlotte Harbor Ry.* v. *Welles,* 260 U.S. 8, 11; and *United States* v. *Heinszen & Co.,* 206 U.S. 370, 382.

On the other hand, regarding § 2 of Act No. 451 of 1947, the petitioner Sunland Biscuit Company, Inc., urges that it is unconstitutional, since the title of the Act "does not contain or give any warning to the lawmaker or to the public that unlawful acts committed by officers of the Minimum Wage Board are to be validated therein," citing to that effect § 24 of our Organic Act.

The eighth paragraph of § 34 of our Organic Act provides that "No bill, except general appropriation bills, shall be passed containing more than one subject, which shall be clearly expressed in its title; but if any subject shall be embraced in any act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be so expressed." 48 U.S.C.A. § 832, p. 267. Therefore, if the amendatory Act of 1947 is in conflict with said para-

graph of our Organic Act, said Act should be void only as to its § 2. However, this Court has repeatedly held that, under the provisions of the above paragraph of the Jones Act, the title of an Act need not be an index of its contents, but that it is sufficient if it is a signpost thereof; and that in the body of the statute there is no matter incongruous with its title or foreign thereto. *Laboy* v. *Corporación Azucarera, etc.,* 65 P.R.R. 397, 399; *Government of the Capital* v. *Executive Council,* 63 P.R.R. 417, 444; *Rivera* v. *District Court,* 62 P.R.R. 491, 516; *Rodríguez* v. *District Court,* 60 P.R.R. 894, 897; *Roig* v. *Gallardo,* 39 P.R.R. 728, 729; and *Trigo et al.* v. *Banco et al.,* 36 P.R.R. 245, 269.

The title of Act No. 451 of 1947 reads thus:

"AN ACT to amend Sections 4, 5, 6, 7, 8, 9, 10, 10A, 11, 15, 17, 19, 23, 24, 25, and 26 of Act No. 8 approved April 5, 1941, entitled 'An Act to create a Minimum Wage Board in the Department of Labor; to define the powers thereof; to establish the procedure for determining the minimum wage to be paid in the different occupations, the maximum working hours and the labor conditions necessary for the maintenance of the health, safety, and well-being of workers; to give a mandatory character to such decrees on minimum wages, working hours, and labor conditions as said board may promulgate in the discharge of its duties; to establish the procedure for appealing from the decisions of the board; to fix penalties for the violations of the provisions of this Act, and for other purposes,' as subsequently amended by Act No. 1, of November 12, 1941, No. 9, of March 20, 1942, No. 44, of April 23, 1942, and No. 217 of May 11, 1945; to confer upon the Commissioner of Labor the faculties and powers necessary to compel the enforcement of the decrees, rules, and regulations heretofore or hereafter issued by the Minimum Wage Board, and for other purposes."

That title states nothing regarding the validation or ratification provided by § 2 of the Act. It contains, in our judgment, only one subject which serves as a "signpost of its contents," and the provisions of § 2 of the Act is not at all incongruous with or foreign to the subject contained in its title. Moreover, as we have stated in *Rivera* v. *District Court,*

*supra,* at page 516, "Only in a clear and conclusive case would we be justified in annulling an act because of deficiencies in its titles in violation of § 34, *supra.*"

Under these circumstances, it must be concluded that by virtue of said § 2 the Legislature validated and ratified in an express manner the acts of the Minimum Wage Board in issuing Mandatory Decree No. 9 involved in this proceeding.

Since it is our opinion that the findings of fact reached by the Board should be considered as conclusive by us, and that the acts of said Board have been validated and ratified by our Legislature, it seems to us unnecessary to discuss the second point raised by the Board in its motion for reconsideration, to the effect that in issuing said decree it did not create any competitive advantage in favor of the manufacturers of biscuits whose establishments are located in the second zone.

Before closing we deem it advisable to state briefly the reason for the delay in deciding this proceeding. As we have already indicated, the petition was filed in this Court on August 31, 1935, when the Court was in vacation. On November 7, 1945, shortly after the Court had resumed its sessions, an order was entered requiring the Board to send up the record of the case, and setting the proceeding for hearing on December 17 following. On November 27, 1945, the parties filed a stipulation requesting a continuance of the hearing which was granted, the hearing being postponed to January 28, 1946, at 2:00 P. M. On January 8 of that year, the parties filed a new stipulation alleging that the attorney of the respondent was absent from Puerto Rico. By reason of that fact, May 27, 1946, at 2:00 P. M., was set for the hearing of the case. On that day the parties were heard and the case was finally submitted to us. Two months afterward the summer recess started by operation of law. Upon the court resuming its sessions, it was constituted by four

justices only, since a fifth justice had resigned on August 31, 1946. After a study of the proceeding, the opinion of the four justices was divided, and it was deemed advisable to wait until the appointment of the fifth justice. The latter was subsequently appointed and he took the oath of office on April 8, 1947. The proceeding was set for hearing on June 2, 1947, and it was decided, in the manner we have already indicated, on June 25, 1947. After the motion for reconsideration herein was filed, it was heard on November 4, following.

For the reasons stated, judgment will be rendered setting aside the decision of this Court of June 25, 1947; the Mandatory Decree No. 9 issued by the Minimum Wage Board on April 30, 1945, is declared valid and effective, and the petitioner is adjudged to pay the sum of $100 as attorney's fees in favor of the respondent.[3]

_____

Mr. Chief Justice Travieso, with whom Mr. Justice De Jesús agrees, dissenting.

On June 25, 1947, this Court, by a majority vote of its members, rendered judgment in the above-entitled cause setting aside Decree No. 9 of the Minimum Wage Board in so far as it is applicable to the biscuit industry. In the opinion which served as a basis for said judgment we set forth, as a principal ground for setting aside the said decree, that by virtue of the latter the Minimum Wage Board, in contravention of the clear and express mandate of paragraph 2 of

_____

[3] Section 24 of Act No. 8 of 1941, as amended by Act No. 217 of 1945 (Laws of 1945, pp. 680, 700), provides in its subdivision (f):

"The petition for review shall operate as a stay of the decree, regulation, resolution, or order appealed from, solely as to the petitioning party or parties, and provided the court so direct, upon the giving of an undertaking to answer for the total payment of the wages involved in each proceeding, or of the damages that may be caused, where wages are not involved, plus a reasonable amount which shall never be less than three hundred (300) dollars, which shall be imposed for attorney's fees on each petitioning party against whom judgment is rendered, unless said party has been allowed to litigate in forma pauperis, for attorney's fees."

§ 12 of Act No. 8 of 1941, as amended by Acts No. 9 of 1942 and No. 217 of 1945,[1] had imposed on the petitioning corporation the payment of minimum wages higher than the ones fixed for its competitors and had given the latter a marked and unnecessary competitive advantage by failing to delimit the territorial area within which their products might be sold without their paying the higher minimum wages, so that the difference in wages should not operate as a discrimination against the petitioner. As to the contention of the Board that Decree No. 9 was ratified by the Legislature pursuant to the provisions of § 2 of Act No. 217 of May 11, 1945 (Laws of 1945, p. 680),[2] we held that the main purpose of Act No. 217, *supra,* was to reorganize the Minimum Wage Board, which up to that time had consisted of nine members, substituting it by a new Board composed of three persons appointed by the Governor; and that it was with the sole purpose of avoiding any interruption in the functioning of the Board during the period intervening between the enactment of the new law and the appointment of the new Board, that said Act provided that all the mandatory decrees, regulations, resolutions, and orders entered by the former Board

---

[1] "Section 12.— . . . . . .

"The board may classify the work in any industry, business, or occupation, according to the nature of the services to be rendered, as well as to fix minimum wage scales suitable for various kinds of works, for the purpose of fixing for each classification the highest minimum wage rate compatible with the purposes of this Act. The board may also prescribe different minimum wages for various districts or regions or for various categories or kinds of the same industry, business or occupation when, in its judgment, such differentiation may be advisable due to the conditions existing between said districts, regions, or categories, provided that such action does not grant competitive advantage to other districts, regions, or categories; but when the minimum wage is approved for an industry, business, or occupation, the rate fixed shall be uniform for every industry, business, or occupation of the same kind, category, or importance in the district or region in question."

[2] " . . . *Provided,* That notwithstanding the repeal decreed under the preceding section, the Minimum Wage Board appointed and functioning under the Act hereby amended, shall continue in the exercise of its faculties and duties until the Governor of Puerto Rico has appointed the three members of the Board provided for in this Act, which Board shall be the continuator and successor of

"shall continue in force" until revoked, suspended, or amended by the new Board. We further held that the above-mentioned provision that the mandatory decrees should continue in force until revoked or amended by the new Board, was not equivalent to a legislative ratification of Decree No. 9, to the extent of curing the defects thereof and of rendering valid and unassailable the violations of law which might have been committed by the Board that promulgated said decree. As an additional ground against the alleged validation of the decree in question, we stated that it was untenable that the Legislature had intended to validate a decree rendered in contravention of the second paragraph of § 12 of Act No. 8 of 1941, as amended by Act No. 9 of 1942, *supra,* when by the said Act No. 217 of 1945, the lawmaker again definitely provided that the Board may prescribe minimum wages for various zones "provided that such action, does not grant competitive advantage to other districts, regions, or categories."

On July 29, 1947, upon petition of the respondent Board, we set aside the judgment of June 25 of that same year, and ordered a new hearing which was held on November 4, 1947.

the present Board for all purposes, without any interruption in time between the existence of one and the other. All matters which, when this Act becomes effective, are pending action or resolution by the present Board, shall pass to the new Board immediately after it is appointed, for it to take cognizance of an action thereon, and to decide them up to their final stage, pursuant to the provisions of the Act in force as now amended. In case the present Board has appointed any Minimum Wage Committee for any industry, business, or occupation, and said Committee has not rendered to the aforesaid Board the corresponding report and recommendations, it shall render same to the new Board, for which purpose it shall remain constituted until its mission is fulfilled, in the same manner in which it may be constituted when the present Act takes effect. The new Board, however, may fill any vacancy occurring in the said Committee. If the present Board should have pending the designation of any Minimum Wage Committee for any industry, business, or occupation, and should have, for the purpose, requested candidates of employers and workmen, the new Board shall have power to make the appointment of such Committee in the manner provided under Section 6 amended by this Act, selecting the members for the employers and the members for the workmen from among the respective lists of candidates submitted, or which are to be submitted, for the consideration of the Board."

The only additional ground adduced in support of the motion for reconsideration of the judgment of June 25, 1947, is that Decree No. 9 was validated and ratified ''in definite and clear terms'' by § 2 of Act No. 451 of May 14, 1947 (Laws of 1947, pp. 950, 970), which reads thus:

"Section 2.—It is hereby provided that *all the decrees,* orders, rules, and regulations promulgated by the Minimum Wage Board prior to the approval of this Act, *shall continue in full force and effect,* and *all the acts and actions* of the officials and employees of the said board, pursuant to the provisions of Act No. 8 of April 5, 1941, as subsequently amended, *are hereby validated and ratified.''* (Italics ours.)

A majority of this Court is now of the opinion that the judgment rendered by us on June 25, 1945, should be vacated and substituted, declaring mandatory Decree No. 9 valid and effective, and adjudging the respondent company to pay attorney's fees.

We dissent from the opinion of the Court for the reasons which we will state presently.

1. Section 2 of Act No. 451 of 1947, *supra,* which became effective subsequent to June 25, 1947, the date of our judgment, has not the scope or effect attributed to it by the opinion of the majority. We do not agree with the conclusion, which we consider erroneous, that the ''said Section clearly and definitely validates and ratifies all the acts carried out by the Minimum Wage Board under the Act of 1941, as subsequently amended.'' The clear language of the statute does not lend itself to such an interpretation. Said § 2 does not provide that the decrees and orders promulgated by the Board are validated and ratified. What it provides, in clear and precise terms, is that all decrees, orders, rules, and regulations promulgated by the Board prior to the approval of the Act ''shall continue in full force and effect.'' When it is stated that a statute shall continue in full force and effect, this is equivalent to stating that its provisions shall have

the force of law until they are repealed by subsequent legislation or annulled by judicial decree. If it had been the intention of the lawmaker to validate and ratify the mandatory decrees of the Minimum Wage Board, it would have been very easy for him to so state in the same clear and definite words which he used to provide that "all the acts and actions of officers and employees of said Board . . . are hereby validated and ratified." When the lawmaker, well aware of the meaning of his words, sought to extend the force and effect of the mandatory decrees, he used words appropriate to that purpose and confined himself to the statement that the decrees "shall continue in full force and effect." When he desired to cure the faults committed or the *ultra vires* acts which the officers or administrative employees of the Board might have performed, he provided in clear and precise terms, that those acts and actions are "hereby validated and ratified."

We think that from the language used by the lawmaker it can not be inferred that he intended to cure, validate, or ratify any violation of law committed by the Minimum Wage Board in the various mandatory decrees promulgated by it. Moreover, assuming that the Legislature had intended to validate and ratify Mandatory Decree No. 9, in so far as it is applicable to the biscuit manufacturing industry, it would be proper to ask the following question: Is the Legislature empowered to validate and ratify a provision of a mandatory decree which, when fixing minimum wages for two different zones, in contravention of the law, grants competitive advantage to one zone over the other, thus depriving the persons established within the affected zone of the equal protection of the laws? It is manifest that the question must be answered in the negative.

It is true that, as stated in the opinion of the Court, the Legislature is empowered to enact remedial statutes. But the very cases which are cited in said opinion show that that

power is not absolute and that, on the contrary, it is subject to certain limitations. In *Pillich* v. *Fitzsimmons, Auditor,* 59 P.R.R. 104, 107, in upholding the validity of the Act to validate and ratify the actions performed by the President of the Senate and of the Speaker of the House of Representatives in appointing, under color of authority, the temporary employees of both Houses, we stated:

"On the contrary, the prevailing rule .in the States as well as in the Federal Government is to the effect that the Legislature may enact any remedial statute validating a law or act, provided the Legislature was originally authorized to enact the validated legislation and provided that such remedial statute does not impair contractual obligations or vested rights secured under a previous legislation. (Citing cases.)"

In *Compañía Ron Carioca* v. *Tax Court,* 67 P.R.R. 662, 666, we upheld the validity of Act No. 5 of July 24, 1946, as a curative statute in respect of Act No. 438 of April 24, 1946 (Laws of 1946, p. 1252). The alleged unconstitutionality of Act No. 438 consisted in that the corresponding bill was not passed with the same text by both Houses of the Legislature, in contravention of the express provisions of the Organic Act. In the opinion delivered by Mr. Justice Marrero, we stated:

"It is a matter of common knowledge that unless the Constitution of a State or the Organic Act of a Territory shall expressly so prohibit, the Legislature has ample power to correct through curative acts certain defects which may have been existed in prior taxation statutes. *United States* v. *Heinszen,* 206 U.S. 370, 51 L. ed. 1098, 27 S. Ct. 742, 11 Ann. Cas. 688. Also, that the mere fact that the tax is collected under an unconstitutional or invalid statute does not prevent the legislative power from validating the proceedings followed under said statute through the enactment of a subsequent statute that does not contain the defects or errors which invalidate the original act. *United States* v. *Heinszen, supra; Rafferty* v. *Smith, B. & Co.,* 257 U.S. 226, 66 L. ed. 208, 42 S. Ct. 71; *Charlotte Harbor Ry.* v. *Welles,* 260 U.S. 8; 67 L. ed. 100, 43 S. Ct.

3; *Hodges* v. *Snyder,* 261 U.S. 600, 67 L. ed. 819, 43 S. Ct. 435; 140 A.L.R. 990 *et seq.;* and *Whitlock* v. *Hawkings,* 105 Va. 242, 53 S. E. 401.

"Curative acts usually have retroactive effect and when by virtue thereof the Legislature levies a tax or carries out an act which it could levy or carry out in the first instance, they are held constitutional notwithstanding the fact that the prior laws which they attempt to correct might have been unconstitutional. 70 A.L.R. 1436; 11 Am. Jur. 1208, 1212; 51 Am. Jur. 163, 164 and 679, and other cases cited in the preceding paragraph."

In *Puerto Rico Tobacco Corporation* v. *Buscaglia,* 62 P.R.R. 782, the question involved was whether the Legislature had acted within its powers when it passed Act No. 22 of 1942 with the purpose of validating and ratifying the collection of taxes under Act No. 22 of June 18, 1939. We held: (1) that Act No. 22 of 1939 was unconstitutional and void because it was discriminatory, denied the equal protection of the laws, and violated the provisions of the Organic Act which require uniformity in the imposition of taxes; and (2) "that if the Legislature was not legally authorized to pass Act No. 22 of June 18, 1939, because said Act was contrary to the constitutional provisions and prohibitions, it had no authority either to ratify said Act or any action taken under it."

The rule established by the cases already cited and by the Federal Supreme Court[3] is that what the Legislature could have authorized it can ratify, if it can authorize at the date of ratification. Said power is necessary in order that the purposes of the government may not be defeated by omissions or errors in the exercise of functions necessary to its administration. Applying said rule to the present case, we must reach the conclusion that if the Legislature was not legally empowered to establish minimum wages for different

---

[3] *United States* v. *Heinszen & Co.* 206 U.S. 370, 51 L. ed. 1098; *Rafferty* v. *Smith, Bell & Co.,* 257 U.S. 226, 66 L. ed. 208; *Charlotte Harbor & N. Ry. Co.* v. *Welles,* 260 U.S. 8, 67 L. ed. 100.

zones in such a manner as to grant competitive advantage to one zone over the other, for this would be equivalent to deny to the prejudiced zone the equal protection of the laws, it is not empowered either to do it through the alleged validation and ratification of a decree, which contains that constitutional defect. We are therefore of the opinion that Mandatory Decree No. 9, in so far as it affects the biscuit manufacturing industry, is void.

2. In the opinion of the Court it is accepted as an unquestionable fact that in establishing the difference in the minimum wages for both zones ''the Board merely followed the distinction fixed beforehand by the characteristics, situation, and special circumstances of the business in either zone.'' We accept the truth of that fact but not the effects thereof. Although it is true that prior to the issuance of Decree No. 9, higher wages were paid in the first zone than in the second, it is also true that, so long as there did not exist any act, decree, or regulation fixing the minimum wages which should be paid in each zone, the manufacturers within the first zone were free to meet the competition of those established in the second zone, by reducing the wages to the level of those paid in said second zone. As soon as Decree No. 9 took effect, the manufacturers of the first zone were deprived of said freedom of action and were left in the power of the manufacturers of the second zone, without any means to defend themselves from the competitive advantage which the challenged decree granted to the latter. The biscuit manufacturers of Bayamón, Cataño, and Río Piedras, located within the second zone, even though they have the same characteristics, facilities, situation, and special circumstances of the business as the manufacturers of the first zone, they enjoy the competitive advantage over the latter which Decree No. 9 grants to them. That is why we maintain that said decree is discriminatory and constitutionally void, as it denies

to the petitioning corporation the equal protection of the laws. This fundamental objection could have been easily avoided if, as was done in the case of the bread manufacturers, it had been provided in the decree that any biscuit manufacturer established in the second zone who sells his products in the first zone shall be bound to pay to his employees the minimum wages corresponding to the first zone.

For the reasons stated we are of the opinion that the judgment rendered by us on June 25, 1947, is correct and should be upheld.